JOHN J. KULPA *vs.* GENERAL ICE CREAM CORPORATION.

JUNE 28, 1945.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

FLYNN, C. J.   This is an action of the case to recover
damages for personal injuries resulting from plaintiff's fall
on defendant's premises, which is alleged to have been
caused by the defendant's negligence.  The ·trial in the su-
perior court resulted in a jury's verdict for the plaintiff in
the sum of $10,000.  Thereafter the trial justice denied the
defendant's motion for a new trial if the plaintiff remitted
all of the verdict in excess of $4000.  The plaintiff failed to
file such remittitur and the case is before us upon exceptions
to that ruling taken by both plaintiff and defendant, and also
upon defendant's exceptions to other rulings during the trial.

The declaration is in three counts.  In each of them it is
alleged in substance that the plaintiff was an invitee in the
defendant's building and that while working on the second
floor, in a place previously designated by the defendant, its
agents and servants, he was suddenly and without warning
precipitated through an opening in that floor, that was con-
cealed by loose boards, to the floor below, thereby sustaining
various injuries and other losses and damages.  The negli-
gence, as alleged in these counts, essentially involved de-
fendant's failure to provide a safe place in which to work

and may be summarized respectively as follows: (1) In maintaining an opening hidden by loose boards that were accidentally moved; (2) in maintaining a trap door in the floor, open at times and hidden by loose boards, upon which bags of sugar were piled and that while plaintiff was carrying a bag of sugar which he had picked up therefrom, some of those boards were accidentally caused to move; and (3) in failing to warn the plaintiff of the existence of a danger caused by an opening being hidden by reason of loose boards which were accidentally moved so that plaintiff fell through, such condition being known to the defendant and unknown to the plaintiff.

The evidence discloses the following facts: Plaintiff was an employee of McCarthy Freight System, Inc., hereinafter called McCarthy. The latter was engaged to remove and transport to defendant's designated plants certain sugar then being stored on the second floor of its warehouse or main building at Pawtucket. The sugar, in bags of one hundred pounds each, was piled up in so-called "tiers", each tier being two bags wide and eight or nine high. The bags at the bottom were placed on loose boards of varying width and length, which had been first placed upon the cement floor to keep dampness from the sugar.

The defendant's superintendent directed the plaintiff and his foreman Gilbert Brown where they were to work and designated the particular sugar which was to be removed. Neither of them had ever been in the building before or was aware of any opening in the second floor; nor was either of them warned by the defendant's agent or anybody else that such an opening existed. No opening or dangerous condition in the floor was visible, according to their evidence, because it was hidden by the loose boards and sugar, which were everywhere. Plaintiff and Brown, on March 26, 1942, had gone to the second floor, where they had worked until late afternoon in accordance with defendant's directions. There was no artificial light on that floor. The procedure followed by them was to start at the top of a tier and work down, each

alternating in taking a bag and putting it on a hand truck. When ten bags were so placed, this truck was taken to the elevator, operated by the defendant's agent, and down to the ground floor, where other workers for McCarthy would take the bags outside and pack them in a truck for transportation.

Plaintiff and Brown were thus working on a tier and had reached the bags that rested directly on the loose boards. Plaintiff bent his knees, stooped over and picked up his last bag; then he stepped back to brace himself, while he turned the bag over preparatory to placing it on the hand truck; but before he could thus place the bag he was suddenly and without warning precipitated through an opening in the floor, about three feet long and between one and one-half and three feet wide, to a cement floor some thirteen feet below. Brown, who had reached for his bag, did not see plaintiff when he started to fall, but turned back toward the truck in time to see him disappearing through the "hole" into the "pit". Only the plaintiff's head and hands were then visible above the floor, on which the bag had fallen. Brown also dropped his bag and ran down the stairs to help the plaintiff. Upon his return to the second floor Brown saw the so-called trap door or cover "landed over on the side" of the opening or hole. Neither plaintiff nor Brown had voluntarily tried in any way to open or operate that trap door or cover.

The defendant's superintendent testified that before he had left the plant, about fifteen minutes prior to the accident, he had examined the cover and "pushed it with the heel of my shoe to be sure there was no play or any danger of it being unloosed. . . . Because we were more or less aware it was there. I had no supervisor in the plant and I didn't want anything to happen." He further testified that he had made other previous inspections of that cover during which he might kick it, as was done that day "If I had any occasion to doubt its security". This doubt, he explained, was "that there were strange men in the plant and the hazard consequently was a little greater." On his arrival that night shortly

after the accident he saw the trap door or cover "on the side of the opening. . . . Nearby," as Brown testified.

This witness also identified a cover in evidence as the one which on the day of the accident had been fitted securely over the hole and was flush with the floor. But Brown and another witness, who had inspected the premises within a few days after the accident, testified that such cover was not the one which was on the second floor at the time of the accident. According to their testimony, that cover was made from an old icebox door, only half hinged and not fixed to the floor, and that it did not fit snugly into the opening but wobbled and went up and down when you stepped on the end of it.

Defendant's manager, another witness, also admitted knowledge of the opening but said that it had not been used for more than ten years. According to his testimony, when he was there last, a day or so before the accident, the sugar was piled over it; and the next day after the accident the cover was off the opening and "tipped over and lying a little away from the hole", as Brown testified. After the accident plaintiff was taken to the hospital from which he was released that night. Subsequently he was treated by three different doctors, whose absence at the trial was explained, and he was finally attended by a physician who testified at the trial.

There are twenty-seven exceptions in the defendant's bill of exceptions, but only nineteen of them are pressed. All the others are either expressly waived or, being neither briefed nor argued, are deemed to be waived. The first group, as argued by defendant, contains exceptions numbered 19, 20, 21, 22 and 23 which relate to the denial of the defendant's separate motions to withdraw from consideration by the jury the first, second and third counts, respectively, and to direct a verdict for the defendant. The defendant contends in general that there was no evidence, direct or circumstantial, to prove the particular negligence which is alleged in the declaration as the sole foundation of his action, as required

by *Shea* v. *First National Stores, Inc.*, 63 R. I. 85; *Faubert* v. *Shartenberg's, Inc.*, 59 R. I. 278; *Capuano* v. *American Locomotive Co.*, 31 R. I. 166; *McGinn* v. *U. S. Finishing Co.*, 27 R. I. 58. He also argues that the evidence of causal connection and of the particular negligence relating to the "trap door" as alleged was so indefinite that it necessarily required the jury's verdict to be based upon pure speculation or by indulging in inference upon inference, citing *Kilgore* v. *The Shepard Co.*, 52 R. I. 151; *Ficocelli* v. *Yellow Cab Co.*, 62 R. I. 73; *Erenkrantz* v. *Palmer*, 69 R. I. 478.

We agree with the principles of law which are well established in the cases above mentioned; but we do not agree that such principles are at all applicable to the facts in the instant case. A review of those cases clearly shows that in each of them evidence was held to be entirely lacking to establish one or more elements essential to prove the precise negligence and causal connection as therein alleged and relied on as the sole foundation of the case; or that the evidence in that respect was too indefinite and was contradicted by other admitted physical facts. But in the instant case there was evidence, if considered most favorably to the plaintiff, to support the essential allegations and causal connection in at least one, if not all, of the three counts, without being self-contradictory or depending upon pure speculation and without basing inference upon inference. The necessary and proper inferences are here deducible from independent facts that are either undisputed or reasonably established.

Even if we assume that the trial justice erred, as defendant contends, in liberally construing the particular allegations concerning a "trap door", it is significant that no such argument appears in the defendant's brief as to the third count. That count does not depend on such particular allegation, but is based on defendant's duty to provide a safe place for plaintiff in which to work and on its alleged failure to warn the plaintiff of a hidden danger in the floor where he was directed by defendant to work, which condition was known to it and was not known or obvious to him. The evidence as

a whole, if believed, would support the submission of the case to the jury at least for determination of defendant's liability under the third count. The defendant therefore would not be entitled in any event to a directed verdict. In that situation none of the rulings excepted to in this group constitutes reversible error and these exceptions are over-ruled.

The next group includes defendant's exceptions, numbered 1, 16, 17, 18 and 24, relating to the granting of a view of the premises and to the court's instructions to the jury in connection therewith. The defendant contends that the opening in the second floor had been closed permanently by covering it with cement and that because of such changed condition a view was necessarily prejudicial. It is also argued that the trial justice erred in giving certain instructions concerning these changes and the covering thereof for purposes of the view. In other words, the defendant argues that the instructions could not eradicate the natural prejudice of the jury resulting from such a view, but on the contrary were such as to arouse their curiosity and speculation.

The trial justice recognized that the object of a view, as authorized by G. L. 1938, chap. 508, §1, was not to get evidence but was merely to enable the court and jury to more clearly understand the evidence to be actually presented at the trial. See *State* v. *Smith,* 70 R. I. 500. The view was granted only after a full hearing and after considerable of plaintiff's evidence had been introduced, showing that he and Brown were never in the building before and that, apart from the place where the opening had been, a view of the general premises elsewhere would be helpful to the court and the jury in understanding the evidence. Existence of the opening in the second floor and the plaintiff's fall through it were facts that the defendant either admitted or did not deny. In the circumstances appearing in the evidence, we are of the opinion that the alleged error, if any, was harmless and that the defendant suffered no prejudice therefrom. In this connection defendant also claims to be aggrieved by

the denial of its motion to pass the case because of the alleged improper argument by plaintiff's counsel; but in our judgment, even if defendant has raised this question properly on the record, there was no error. Exceptions 1, 16, 17, 18 and 24 are therefore overruled.

The defendant contends, under exception numbered 2, that it was error to admit the evidence of plaintiff concerning "What was the condition of the room as to lighting about at the time when you went through the hole", the answer being it was "Just starting to get dark". The defendant misconceives the purpose of the evidence. It was not introduced as supporting any negligence of the defendant in failing to provide a well-lighted room, which was not specifically alleged; but it was introduced as bearing upon the question whether the plaintiff had exercised due care in failing to observe the alleged dangerous condition. We find no error in this ruling and the second exception is overruled.

The defendant also presses exceptions numbered 8 and 9 to the admission of testimony by plaintiff's physician concerning the reason why the plaintiff had not submitted to an operation, the witness stating: "The answer I got from the patient was that he had no way of defraying the expenses". The trial justice refused to strike out the answer but instructed the jury against permitting it to influence them upon any sympathetic or other basis. While the answer, in our opinion, was objectionable as hearsay, it became harmless when the damages involving that evidence were considered as excessive by the trial justice in ruling on the motion for a new trial. These exceptions are overruled.

A final group of defendant's exceptions, numbered 4, 5, 6, 15, 25 and 26, relating to evidence concerning a future possible operation and losses therefrom and to alleged excessive damages as awarded by the jury are virtually waived because it is admitted that the error, if any, in the rulings under consideration becomes harmless if the trial justice's order of a remittitur is sustained. In view of our ultimate approval

of such ruling we need not discuss these exceptions further and they are overruled.

That leaves for discussion only the plaintiff's bill of exceptions, which contains only one real exception, namely, to the decision of the trial justice granting defendant's motion for a new trial unless the plaintiff would remit all of the verdict in excess of $4000. He argues substantially that the evidence supports the verdict as rendered and that the trial justice, in reducing that award, erred in applying a different rule of law from that given to the jury at the trial.

The trial justice filed an extensive rescript in which he points out the evidence and reasons which led him, in the exercise of his independent judgment, to approve the verdict as to liability but to disapprove it as to all damages in excess of $4000. We have examined the rescript, in connection with a review of the evidence, and we do not find that in making his decision the trial justice misconceived the law or the evidence or his duty in ruling on such a motion. Nor do we find that in making this reduction in the damages he followed a different rule from that given to the jury, as plaintiff contends.

At the trial the plaintiff made particular claims, through his physician, concerning a future possible operation, with resulting expenses therefor and losses therefrom, in order to correct an alleged fracture of an intervertebral disc. Because of this testimony, regardless of its weight, the trial justice was obliged to present that issue to the jury in the first instance. His instruction was, in substance and effect, that if the evidence reasonably showed that the plaintiff had such fracture and that he reasonably would continue to be disabled unless he would undergo such an operation and that he intended to undergo such operation, he was entitled to have the expenses that were reasonable under all the circumstances. But a review of the evidence, as the trial justice pointed out, shows that the plaintiff did not establish by a fair preponderance that he had in fact any fracture of the intervertebral disc, which was the sole reason why such an

operation might be required. Plaintiff's own physician admitted, and in this agreed with the medical testimony for the defendant, that the only correct way to determine that such a disc was fractured was to have a lipiodol injection and special X-ray photographs. No such tests had been made. The X-ray photographs which were in evidence admittedly did not show any such fracture and defendant's medical testimony further showed that plaintiff had fully recovered and was then able to do heavy work.

On that view, therefore, all of the evidence as to a future possible operation, hospitalization, nursing, pain and suffering and loss of wages, in connection therewith, could not stand as having been reasonably proved. The trial justice in his decision gave an allowance for all of the items of loss of wages, medical bills, and pain and suffering which, in his opinion, the plaintiff had established by a fair preponderance of the evidence. We cannot say, from an examination of the evidence, that the amount of the verdict as approved by the trial justice is so inadequate as to require that it be increased or is still so excessive as to require a further reduction thereof. Therefore the plaintiff's exception is overruled.

All of the exceptions of both plaintiff and defendant are overruled, and the case is remitted to the superior court for a new trial unless the plaintiff, on or before July 9, 1945, shall file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $4000. If such remittitur is filed, the superior court is directed to enter judgment for the plaintiff in the amount of the verdict as reduced by the remittitur.

*William H. McSoley, William A. Gunning,* for plaintiff.
*Henry M. Boss,* for defendant.