LOUIS J. SASSO *et al. vs.* THE HOUSING AUTHORITY OF THE CITY OF PROVIDENCE, RHODE ISLAND.

JANUARY 28, 1955.

PRESENT: Flynn, C. J., Capotosto, Baker, Condon and O'Connell, JJ.

CAPOTOSTO, J. This is a petition in condemnation proceedings for the assessment by a jury of damages caused through the taking by the respondent of some ten acres of land in the city of Providence belonging to Louis J. Sasso and Norman Marzano, owners in fee as tenants in common. A jury in the superior court returned a verdict for petitioners in the sum of $79,560, including interest from the date of condemnation, January 2, 1951, to the date of the verdict, November 2, 1953. The respondent's motion for a new trial was heard and denied. The cause is before us on its exception to the denial of that motion and on certain other exceptions relating to the allowance of an amendment to the petition at the time of trial, to the granting of a motion for a view of the premises, to rulings on evidence, to the refusal to charge, and to parts of the charge.

Under the provisions of public laws 1941, chapter 1030, as amended and re-enacted by P. L. 1947, chap. 1860, the petitioners' land and other adjoining properties were condemned for a low-rent housing development known as "Manton Heights P.H.A. Aided Project R. I. 1-5." With the exception of the issue concerning the amendment to the petition now before us, no question is raised as to the legality and competency of the condemnation proceedings.

Rose Sasso and Alice Marzano, respective wives of the owners of the land taken or allegedly adversely affected by such taking, were joined as petitioners. For the reasons stated in *Salvatore* v. *Fuscellaro,* 53 R. I. 271, 274, they are

not necessary parties and therefore their inclusion herein will be treated as surplusage. Hereinafter the term petitioners will mean only Louis J. Sasso and Norman Marzano, the land actually taken will be called parcel 1, and the neighboring tract for which petitioners claim severance damages will be called parcel 2.

Generally speaking, the evidence shows that in 1941 petitioners bought a large tract of land abutting northerly on the southerly side of Manton avenue, a main thoroughfare in the city of Providence running approximately in an easterly and westerly direction from relatively near-by Olneyville Square, a highly developed industrial and shopping center on the east, to certain through highways leading into Massachusetts and Connecticut on the west. Salmon street, a public road about 24 feet wide for some distance in from Manton avenue, ran southerly therefrom through the easterly part of petitioners' property, thus dividing it into two distinct pieces of property.

The evidence further shows that after 1941 almost all the frontage on Manton avenue of the original tract had been sold as ordinary lots for various uses before condemnation of parcel 1. At the time of condemnation, January 2, 1951, petitioners owned one of those lots, 40 feet wide by about 100 feet deep, known as lot 113 on assessors' plat 96 of the city of Providence. They also had a right of way from Manton avenue, some 20 feet in width and for a distance of approximately 100 feet, at the extreme northwesterly corner of the original tract. Both lot 113 and the right of way were used by petitioners, who were in the road construction business as a corporation under the name of S & M Construction Co., as entrances from Manton avenue to the land that we here call parcel 1.

Broadly speaking parcel 1, the soil of which admittedly contained a great quantity of merchantable sand and gravel, was rectangular in shape and about 433 feet wide by more than 1,000 feet long. Its undisputed area was 454,985 square feet. The northerly end of this tract adjoined the

rear of the lots fronting on Manton avenue and its southerly end abutted on the tracks of the New York, New Haven & Hartford Railroad Company. It was bounded on the east by Salmon street, in part a public road as hereinbefore described, and on the west by land of the Pleasant View Land Company. The northerly quarter or third of parcel 1 was comparatively level, but the remainder was definitely uneven, sloping rather decidedly at times in a southerly direction towards the railroad tracks. On the level part thereof petitioners had a metal shed, a grease pit and a loading platform.

Parcel 2, or that part of petitioners' property on the east side of Salmon street for which they claim severance damages, started at a point about 90 feet from the intersection of Manton avenue and Salmon street, and maintaining a uniform depth of slightly more than 90 feet extended southerly on the east side of the public part of Salmon street for a distance of 240 feet. The improvements on this tract, which was located opposite the level land of parcel 1, consisted of a substantial office building, a large garage, and a number of bays for the storage of equipment.

Testimony at great length was given by petitioners with reference to their claim for severance damages to parcel 2 due to the loss of an alleged integrated use with parcel 1. They testified in substance that they had numerous pieces of equipment, some of which carried booms of considerable length or had to be transported on trailers; that before condemnation when it was necessary to service, repair or store the more cumbersome pieces of equipment it was their custom to bring them in from Manton avenue through lot 113 onto the level portion of parcel 1 from whence they were easily moved across Salmon street to parcel 2; and that after condemnation they were no longer able to move such equipment in that manner because, being then obliged to use Salmon street in going to parcel 2, there was not sufficient clearance at the intersection of that street with Manton

avenue to permit free passage of their more unwieldy equipment.

The respondent's position on this issue, as it appears mostly in the cross-examination of petitioners, was that Salmon street was sufficiently wide to permit access to parcel 2 by all of petitioners' equipment; that if on rare occasions some difficulty were encountered at the intersection owing to a boom of unusual length, the boom could be temporarily disconnected; that, as a matter of fact, there had been no substantial change in the use of parcel 2 by petitioners after the condemnation of parcel 1; that the infrequent and temporary inconvenience on which they relied for severance damages was, if anything, nothing more than a slight interference with the manner in which they had previously operated in carrying on the business of the S & M Construction Co. and not the disturbance of a true integrated use.

Two real estate experts testified for petitioners and three for respondent. Omitting, as unnecessary, reference to the different methods of computation used by them, they testified as follows. One of petitioners' experts fixed the market value of parcel 1 at the time of condemnation as $73,000, and the other at $67,000. Both stated that in their judgment the market value of parcel 2 was diminished by $15,000. Such conclusion apparently rested entirely on their giving full credence to petitioners' testimony that after condemnation some difficulty was experienced in moving the more unwieldy equipment, a matter clearly beyond their knowledge as real estate experts only. In our opinion their testimony with reference to any consequential damage to parcel 2 was so speculative and conjectural in character as to deprive it of all probative force.

Two of the experts for respondent valued parcel 1 at $32,500, while the third, a person of wide experience in the appraisal of real estate, set such valuation at $35,000. All three experts gave no consequential damages to parcel 2.

We now call attention to the jury's specification of the

various sums allowed by them as damages and accrued interest in arriving at their general verdict of $79,560, which particulars were disclosed on rendition of the verdict in answer to questions by the trial justice without objection from the parties. It appears of record that the specific awards were as follows: market value of parcel 1, $53,000; severance damages for parcel 2, $15,000; interest on both the aforesaid sums at the statutory rate of 6 per cent per annum from January 2, 1951, the date of condemnation, to November 2, 1953, the date of verdict, $11,560; total $79,560.

The respondent's first exception relates to the allowance of an amendment to the petition. As originally filed, petitioners' claim was limited to the market value of parcel 1. When the case was called for trial they moved to amend the petition by adding a claim for severance damages to parcel 2. This motion was granted by the trial justice with the offer to respondent of postponing the trial if it so desired, which offer was not accepted. Under this exception respondent contends that the allowance of the amendment was error in that petitioners should not have been permitted to inject into the case as an afterthought a claim that they had failed to make within the time fixed by the statute. Be that as it may, since our view of the merits of the case makes it unnecessary to express any opinion on the procedural question thus raised, we will assume without deciding that the amendment was properly allowed.

Under the next exception respondent contends that it was error to grant petitioners' motion for a view, since the premises, meaning parcel 1, had been completely changed by the erection of buildings and other improvements for the housing project. General laws 1938, chap. 508, §1, provides that in all cases in which "it shall seem advisable to the court," on request of either party a view by the jury may be ordered. It is settled in this state that the object of a view is not to obtain evidence but is only to enable the jury to understand more clearly the evidence

458

presented at the actual trial of the case. *Kulpa* v. *General Ice Cream Corp.*, 71 R. I. 168, 174; *State* v. *Smith*, 70 R. I. 500, 507.

From the discussion on the motion and the allegations in the amended petition the trial justice apparently recognized that, notwithstanding the changed condition of parcel 1, conflicting evidence might well be offered relating to the surroundings and to the actual or potential use by petitioners of that land. He apparently believed that the parties would probably disagree on a number of matters, such as the accessibility of parcel 1 to Manton avenue, the possible development of railroad facilities, and the alleged interruption of an integrated use with parcel 2. In view of these circumstances and others, we cannot say that the trial justice abused his discretion in granting the motion for a view. The exception is therefore overruled.

Points III and IV in respondent's brief concern its exceptions to the exclusion of evidence with reference to the stipulated rent in a lease from petitioners to the S & M Construction Co., to the purchase price in 1941 of all the land here involved, and to the cost of certain improvements subsequently made thereon. Our examination of the record as to those matters convinces us that in the circumstances here such evidence was either immaterial or not prejudicial. The exceptions under these points are overruled.

Exceptions 67, 69, 71 and 72 are directed to that portion of the charge wherein the jury were instructed that they could award severance damages to parcel 2 if they found that the unified use claimed by petitioners was disturbed by the taking of parcel 1. The respondent contends that such instructions were erroneous as a matter of law, because there was no competent legal evidence to establish an integrated use of the two parcels. Considering the above exceptions in relation to each other, respondent strongly urges that the trial justice erred in denying its request to charge the jury that in the circumstances of this case petitioners

were not entitled to recover consequential damages for injury to parcel 2.

Although the law governing the award of severance damages in condemnation proceedings is well settled, there is often difficulty in applying it to the facts of a particular case. Little, if any, trouble is experienced where there is some physical contiguity between the land taken and the remainder. *Greene* v. *State Board of Public Roads*, 50 R. I. 489; *Taber* v. *New York, Providence & Boston R. R.*, 28 R. I. 269; *Johnston* v. *Old Colony R. R.*, 18 R. I. 642. Quite a different situation is presented when, as here, the two parcels in question are unequivocally separated from each other by fixed and definite boundaries, such as a highway. In such a case it is generally held that the two tracts can be considered as one only when they are so inseparably connected in the use to which they are applied that the taking of one *necessarily* and *permanently* injures the other. *Darlington* v. *Pennsylvania R. R.*, 278 Pa. 307; *Essex Storage Electric Co.* v. *Victory Lumber Co.*, 93 Vt. 437. 4 Nichols Eminent Domain (3d ed.), §14.3, p. 426, §14.31, pp. 431 *et seq.;* 29 C.J.S., Eminent Domain, §§140, 141; 18 Am. Jur., Eminent Domain, §270, p. 910. For cases raising the question in circumstances similar to those presently under consideration, see *Potts* v. *Pennsylvania S. V. R. R.*, 119 Pa. 278; *Baetjer* v. *United States*, 143 F.2d 391, 396.

Applying the law applicable to the facts in the instant case we are clearly of the opinion that there was no competent evidence to support petitioners' claim of an integrated use of parcels 1 and 2 within the meaning of that law. It is beyond dispute that on the present record petitioners retained full ownership and control of parcel 2 without impairment of its physical integrity or appreciable loss of accessibility to it from Manton avenue for use of the improvements thereon in connection with the business of the S & M Construction Co. Construing the evidence most favorably to petitioners on the issue of an integrated use of parcels 1 and 2, it plainly appears that the only disadvan-

tage resulting to them from the condemnation of parcel 1 was that thereafter they might occasionally require some slight adjustment to a few of the more unwieldy pieces of equipment employed in the business of the construction company in order to move them onto parcel 2 with the same facility as theretofore. To hold that in such a situation the taking of parcel 1 *necessarily* and *permanently* injured parcel 2 would be in clear disregard of the above-stated and well-established rules of law governing the allowance of severance damages when two tracts of land are plainly separate and distinct from each other. Exceptions 67, 69, 71 and 72 are therefore sustained.

Under exception 75 respondent urges that it was error to deny its motion for a new trial, first, because the compensation fixed by the jury for the taking of parcel 1 was inconsistent with the weight of the credible evidence on that point; and secondly, assuming that the question of a unified use was one for submission to the jury in the first instance, petitioners' evidence concerning a resulting injury to parcel 2 was clearly inadequate to support an award of severance damages.

Briefly stated, respondent's argument with reference to parcel 1 is that in fixing the damages at $53,000 for that tract the jury were unduly influenced by the inflated valuations of $67,000 and $73,000 by petitioners' experts; and that the sum of $35,000, which its more experienced expert fixed as the outside price, represented the true market value of that ungraded and undeveloped land. We do not agree with such contention. Nothing appearing to the contrary, it is not to be presumed that the jury failed to give proper consideration to the qualifications and credibility of all the experts. Furthermore, it is obvious from their finding that they did not accept blindly the testimony of the expert witnesses for either of the parties. Apparently exercising their own judgment in the matter within the scope of competent evidence, they decided that $53,000 was the fair market value of parcel 1 at the time of condemnation.

There was no error in denying respondent's motion for a new trial on this ground.

Quite a different situation is presented with reference to the issue of severance damages to parcel 2. However, no further discussion of that issue is necessary. In so far as the exception under consideration relates to the award of severance damages to parcel 2 it is sustained.

The respondent's exceptions 67, 69, 71 and 72 are sustained. Exception 75 is sustained to the extent above indicated. All other exceptions briefed or argued and not herein specifically mentioned have been considered and found either to be without merit or nonprejudicial. They are overruled.

The case is remitted to the superior court for a new trial unless petitioners shall on or before February 11, 1955 file in the office of the clerk of the superior court a remittitur of all of the verdict in excess of $53,000 plus accrued interest on that sum from the date of condemnation to the date of the verdict. If such remittitur is filed as aforesaid the superior court is directed to enter judgment for the petitioners on the verdict as reduced by the remittitur, otherwise to grant a new trial.

*Coleman B. Zimmerman, Dooley, Dunn & Paolino, Thomas J. Paolino, G. Chandler Beals,* for petitioners.

*Arthur Falcone, Walter V. Moriarty, John W. Moakler,* for respondent.