GEORGE AJOOTIAN *et ux. vs.* DIRECTOR OF PUBLIC WORKS FOR THE STATE OF RHODE ISLAND.

NOVEMBER 4, 1959.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

98

POWERS, J. This is a petition under public laws 1953, chapter 3105, sec. 11, for the assessment of damages caused through the taking by eminent domain on August 27, 1957 of the petitioners' real property by the state for freeway purposes. The condemnation was effected pursuant to the provisions of said public laws and general laws 1938, chap. 75, §2, as amended. The case was heard by a superior court justice sitting with a jury and resulted in an award of $8,550 plus interest. The petitioners' motion for a new trial was heard and denied. The case is before us on their exception to the denial of that motion and on certain other exceptions to rulings during the course of the trial.

The property in question was a two-and-one-half story wooden frame dwelling situated on a lot of land consisting of 6,279 square feet and located at the northeast corner of Rosedale street and Huntington avenue in the city of Providence. There were three rental units. Two of them, the first and second floors, were occupied at the time petitioners purchased the property early in 1954 for the sum of $8,000, but on August 27, 1957, the date on which the property in question was taken, only the second floor was rented. The testimony is in conflict as to the amount of the rentals. The petitioner husband testified that when occupied he received $35 a month each for the first and second floors and that for the third floor the rental was $30 a month.

William E. Coyle, Jr., testifying as a real estate expert on behalf of the state, stated that on information received

by him to the effect that in each instance the rental of the first and second floors was $25 a month, computed the fair market value to be $6,500. This witness also reached that same figure by using two other methods of computation, namely, an analysis of 150 sales of comparable property in the Cranston-Providence area and the cost of reproduction less depreciation. He further testified that his estimate was based on the poor condition of the property at the time of the taking. He stated that he assumed the property had been permitted to run down because the taking by the state was common knowledge for some time prior to the condemnation, and for this reason he felt that the true market value was $8,200. He also stated that he had been instructed by the state to resolve every question of doubt in favor of the property owner.

Antonio Mancini, who testified on behalf of petitioners as a real estate expert, stated that in his opinion the property was worth $10,500 to $11,000. He based his opinion on the asking price for comparable property in the neighborhood, the tax value on the land and the layout of this particular house. Mr. Mancini was thoroughly familiar with the house, being the person from whom petitioners purchased the property. He also testified that if the property were put to its full potential use, that is, for business, it would have a fair market value of $14,000.

Charles F. Kurtz, another real estate expert who testified on behalf of petitioners, gave as his opinion that the fair market value of the property in question was $10,500, basing his opinion on his judgment, or as he stated, "I use my judgment as to whatever it is. I don't go any other way. I don't see how I could do it any other way."

The bill of exceptions alleges six grounds of error. The petitioners neither briefed nor argued the second and fourth exceptions, both of them evidentiary in nature, and under our well-established rule these are deemed to be waived. The remaining exceptions are: First, to the overruling of

their exception to the granting of a view; third, to the refusal of the trial justice to admit an executed lease of the real estate marked petitioners' exhibit 1 for identification; fifth, to the admission of a photograph of the property marked respondent's exhibit A; and sixth, to the refusal of the trial justice to grant petitioners' motion for a new trial.

For reasons which are obvious we shall first consider petitioners' third and fifth exceptions.

The petitioners' witness Mancini offered to testify that sometime prior to the condemnation there had been a lease executed between him and the Texas Oil Company which had been canceled by mutual agreement prior to the sale of the property to petitioners. Counsel for the state duly objected to this line of questioning and his objection was sustained. However, the petitioners introduced the lease for purposes of identification, but their motion to introduce it as a full exhibit was denied on the grounds that it was purely speculative and as such was inadmissible. It was the denial of this motion on which petitioners base their third exception. We have carefully reviewed the transcript and are of the opinion that the ruling of the trial justice was not erroneous. No competent evidence being offered to show that the lease had not been canceled for any one of a number of reasons, it was highly speculative and therefore petitioners' motion was properly denied. This exception is without merit and is overruled.

The petitioners' fifth exception relates to the admission in evidence as a full exhibit of a photograph of the property taken sometime during the winter and after the condemnation in August. William E. Coyle, Jr., the state's real estate expert, having been shown this photograph, testified that it was a fair representation of the condition of the property at the time of the taking in August. The petitioners objected to the introduction thereof, pointing out that it could not be a fair representation since the snow on

the ground and the dwelling refuted the testimony of witness Coyle to the effect that this was a fair representation of the property at the time of the condemnation during the summer. The petitioners contend that the admission of this photograph was prejudicial since it would seem that the property must have been somewhat impaired by the weather. The jury could not have been misled by the witness' opinion that the photograph was a fair representation, since in all the circumstances they could reach the same or a different conclusion independent of his opinion. In our judgment the admission of this exhibit was not prejudicial and petitioners' fifth exception is overruled.

The petitioners' first exception relates to the granting of the state's motion for a view of the condemned premises by the jury. It is well settled in this state that the object of a view is to aid the jury to understand more clearly the evidence presented at the trial. *Sasso* v. *Housing Authority*, 82 R. I. 451; *Kulpa* v. *General Ice Cream Corp.*, 71 R. I. 168; *State* v. *Smith*, 70 R. I. 500. General laws 1956, §9-16-1, authorizes the trial court to order a view by the jury and this court has held that such an order is discretionary with the trial justice. *State* v. *Germain*, 47 R. I. 269; *State* v. *Smith, supra*.

In *State* v. *Smith*, in commenting on the right to a view being within the discretion of the court, we stated at page 508: "But when an objection on grounds other than those purely legal is made to a motion that a view be taken, the trial justice should not pass upon the motion *pro forma*. He should require sufficient information respecting its merits so that he may intelligently exercise his discretion in deciding whether it was reasonably necessary for the better understanding of the evidence, for the expedition of the trial and in protecting the rights of all interested parties. The burden of satisfying him that the taking of the view at such time is reasonably necessary under all the circum-

stances is upon the moving party, in this instance, the state."

In the instant case the moving party was the state and it appears from the record that the court stenographer was not present at the time the motion to take a view was made and argued. What was said by the parties in argument and the court in granting the motion for a view is therefore not before us. It is now incumbent upon us to examine the record itself to determine whether or not in the circumstances here the granting of the motion for a view was an abuse of discretion. The effect of the view in the instant case allowed the jury to see the property long after it was taken by the state and after the condition of the premises had materially changed for the worse.

To support its contention that the motion for a view was properly granted, the state relies on Sasso v. *Housing Authority, supra,* also a condemnation proceeding. That case involved the question of substantial severance damages to a parcel not taken but used by the petitioner in connection with the parcel condemned. In commenting on the granting of the motion made by the petitioner for taking a view, the court stated at page 458: "From the discussion on the motion and the allegations in the amended petition the trial justice apparently recognized that, notwithstanding the changed condition of parcel 1, conflicting evidence might well be offered relating to the surroundings and to the actual or potential use by petitioners of that land. He apparently believed that the parties would probably disagree on a number of matters, such as the accessibility of parcel 1 to Manton avenue, the possible development of railroad facilities, and the alleged interruption of an integrated use with parcel 2. In view of these circumstances and others, we cannot say that the trial justice abused his discretion in granting the motion for a view."

Here no such complicated question is presented. The property in question consists of an ordinary two-and-one-

half story building on a corner lot with no intricate descriptions which might require a view to enable the jury to fully understand and evaluate the testimony elicited at the trial. We are of the opinion that the customary purpose for which a view is ordinarily allowed was not shown in this case. In the circumstances previously outlined, the trial justice's action was clearly an abuse of discretion which was prejudicial to the petitioners' right to a fair hearing. The first exception is therefore sustained.

In view of our decision on the petitioners' first exception, we deem it unnecessary to discuss their sixth exception.

The petitioners' first exception is sustained, the remaining exceptions which have been considered are overruled, and the case is remitted to the superior court for a new trial.

*George Ajootian, Albert Elliot Sarkisian,* for petitioners.

*Guy E. Gallone,* Chief Counsel, *John E. Graham, III,* for respondent.