Argued April 27, reversed and remanded July 23, petition for
rehearing denied September 8, petition for review
denied November 4, 1970

# STATE HIGHWAY COMMISSION, *Appellant, v.*
# HAZAPIS ET UX, *Respondents.*

472 P2d 831

*Leslie B. Hampton,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs were Glen V. Sorensen, Assistant Attorney General, G. E. Rohde, Assistant Attorney General and Chief Counsel for the Oregon State Highway Commission, and Lee Johnson, Attorney General, Salem.

*Lawrence M. Dean,* Astoria, argued the cause for respondents. With him on the brief were Macdonald, Dean & McCallister and Harold A. Snow, Astoria.

Before SCHWAB, Chief Judge, and FOLEY and BRANCHFIELD, Judges.

BRANCHFIELD, J.

This is an action brought by the state of Oregon by its Highway Commission to condemn certain land required for construction of the Wauna interchange on the Columbia River Highway.

Defendants owned 2.2 acres of land, of which the plaintiff took 6/10 of an acre. Located on the portion not taken is a two-story building with an apartment on the upper level and a tavern-restaurant on the lower level. The property was at the intersection of the Columbia River Highway with County Road No. 290, also known as Wauna Road. Defendants had no direct access to the Columbia River Highway, but there was no restriction of their access to Wauna Road which connected with the highway.

The Columbia River Highway, between Portland and Astoria, was constructed many years ago. In 1958, the State Highway Commission relocated a portion of the Columbia River Highway, known as the Wauna-Westport section. The "old" or "original"

Columbia River Highway still exists, but is now a county road. Wauna Road ran from Wauna to the "original" Columbia River Highway. When the "new" Columbia River Highway was built, it crossed and was connected at grade to Wauna Road. The "new" Columbia River Highway will hereafter be referred to as the highway.

The construction of a new Crown-Zellerbach paper mill at Wauna, starting in 1964, caused a tremendous increase in traffic entering, leaving and crossing the highway at the Wauna Road intersection. In order to provide a safer crossing and safer interchange, the State Highway Commission resolved to relocate a portion of Wauna Road and to carry the traffic on that road across the highway via an overpass. The overpass is located about 500 to 600 feet northwest of the former grade crossing. In order to provide access, the Commission decided to add interchange legs to the overpass and construct a full diamond interchange between Wauna Road and the highway, similar to many interchanges existing along freeways in Oregon.

In cooperation with the Clatsop County Court, a portion of Wauna Road was relocated to connect to the overpass and interchange and the remainder of the contemplated work was completed. Wauna Road was closed at the point where it formerly connected to the highway at grade. Since defendants' property is located immediately adjacent to the former Wauna Road intersection, the closure of the road left the property on a cul-de-sac.

Before the improvements were made, the defendants and their customers nearly always came on the property from the direction of the highway. The community of Wauna was in that direction, as was all the

highway traffic. The Wauna Road went on past defendants' property to the "original" Columbia River Highway, but was little used by defendants and their customers because they seldom had occasion to go that direction.

After completion of the project, defendants' property still fronts on Wauna Road and still has direct access to Wauna Road as before. Traffic cannot immediately enter the highway from Wauna Road at that point because of the closure of the grade intersection. However, Wauna Road is open for two-way traffic in a direction away from the highway. Traffic leaving defendants' property can still connect with the "original" Columbia River Highway, or can turn onto the relocated section of Wauna Road to go to Wauna. Traffic can also enter or leave the highway in either direction via relocated Wauna Road and the new interchange. Traffic on the highway now must go farther to reach defendants' property than it did before the improvement, and must travel farther on the return trip than it formerly did.

The property taken from defendants behind the tavern-restaurant was on the side away from "old" Wauna Road. That property was used for construction of the on-ramp connecting the "new" Wauna Road with the eastbound lane of the highway.

■■ The parties are in agreement that although there are 15 assignments of error, only one fundamental question is raised. Plaintiff asserts that the closure of Wauna Road at its intersection with the Columbia River Highway did not result in compensable damage to defendants. Defendants' position is that the state provided them with unreasonable access to their property, that the remaining property was then on a cul-

de-sac, and that these factors may be considered by the jury in fixing damages.

There are two general elements of compensation for which defendants are entitled to consideration. The first is the value of the property taken by the plaintiff. The second is the damage to the remaining property. Even though the expert witnesses for the parties differed in their valuation of the property taken, the principal issue in this case concerns the damage to the remainder. Mr. Hazapis said that lack of suitable access to the remaining property was his principal complaint. He testified as follows:

"Q Then let me clarify one thing: Is—your claim, your sole claim to damage based on the fact that traffic doesn't go in and out of this spot right here (indicating)?

"A No. No, it's not my main complaint. The main complaint is because the state didn't provide me with a suitable access.

"Q In other words, if there was some other reasonable access of any kind—

"A Oh, yes.

"Q —We'd be talking about a different thing?

"A I wouldn't even be here."

Circuity of travel and the creation of a cul-de-sac were involved in the "unreasonable access" complained of by the defendants. Plaintiff's witnesses claimed that the access was reasonable.

The Oregon Supreme Court has previously ruled that there can be no compensation for a road change which results in circuity of travel. In *Highway Com. v. Central Paving Co.*, 240 Or 71, 74, 399 P2d 1019 (1965), the court said:

"The cases are in disagreement as to whether a landowner can recover compensation for circuity of

route resulting from the construction of a limited access highway. We adopt the view of those courts which deny recovery."

In *Highway Com. v. Ralston et ux*, 226 Or 143, 359 P2d 529 (1961), error was assigned to the giving of an instruction which permitted the jury to consider loss of access to the landowner's property in the determination of damages. The landowner tried to justify the giving of the instruction by arguing that the value of his property was diminished by the change in traffic flow on the road contiguous to his property, resulting from the elimination of a grade crossing and the construction of an overhead-freeway crossing. The court said at page 144:

> "It is too well settled for argument that a property owner may not recover damages where the sovereign, in exercise of the police power, reroutes, increases, or decreases the flow of traffic on a public highway. Public regulation is not a taking. *State Highway Com. v. Burk et al*, 200 Or 211, 230, 265 P2d 783, and authorities therein cited."

The defendants cite *Sandstrom v. Oregon-Washington Etc. Co.*, 75 Or 159, 146 P 803 (1915), for the principle that compensation should be allowed in cul-de-sac cases. That case and other Oregon cases allowing recovery of damages because of the creation of a cul-de-sac all relate to property within incorporated cities. In *Sandstrom*, the court pointed out that the owner had purchased his property "with reference to dedicated streets appearing in the plat." 75 Or at 163. We have found no Oregon cases allowing damages to an owner of rural property because of being placed on a cul-de-sac. In any event, defendants' interpretation of *Sandstrom* is in conflict with the decision in *Highway Commission v. Central Paving*, supra.

It was error for the trial court to rule as a matter of law that the defendants were entitled to compensation for "unreasonable access" and to submit to the jury the question of allowing damages because the property was placed on a cul-de-sac. In most cases, except where a special statute intervenes, courts do not allow recovery for creation of a cul-de-sac, at least where the taking is by public, rather than private, authority. 2 Nichols Eminent Domain, § 6.443 (3) says at page 582:

"* * * [I]t is held by perhaps the weight of authority in this country that when a portion of a street is obstructed or discontinued by authority of law, even if the constitution or statutes in force require that the owners of property damaged by such discontinuance or obstruction shall be compensated, the owner of land abutting upon such street, but not upon the portion obstructed or discontinued, is not entitled to compensation, if his land may still be reached from the other direction. * * *"

Nichols, supra, at page 587, says:

"* * * The subject is thus no simple one, and, although the case of the man who has bought a valuable piece of property on a busy street and is left upon a *cul-de-sac* appeals to one's sympathy, it is hard to see how a court can venture from the test of special damage usually recognized in this country without running into all sorts of difficulties in determining where to draw the line. If the rule works injustice in a particular class of cases, the remedy should be in the legislature, which can make an arbitrary distinction to fit the merits of the case before it without establishing a judicial precedent not resting on a logical foundation."

The owner of real property abutting upon a city street which becomes a cul-de-sac by reason of the

action of the State Highway Commission may, under certain circumstances, recover damages. ORS 373.060. However, ORS ch 374, which provides for control of access to throughways outside of incorporated cities, contains no similar provision. The legislature has thus indicated that it knows a problem can exist when a cul-de-sac is created in front of property in a city and we assume it has knowingly refrained from acting with regard to rural property. If the public policy is to be changed, it is appropriate for that change to be made by the legislature rather than the court.

■ In this case the court permitted defendants' expert witnesses to testify, over objection, to the fact that they had included in their computation of the after-value of the property damages resulting from the closure of the county road and what those witnesses termed "unreasonable access" remaining after the improvement. The witnesses did not assign a specific value to these factors but did admit that they had included them in determination of the after-value. In *Highway Com. v. Central Paving Co.*, supra, page 76, the court said:

> "* * * A value witness need not attribute a value to each of the elements properly employed in reaching his ultimate estimate of value. However, if the estimate is based in part upon an element improperly employed, the estimate is not competent evidence and the state is entitled to inquire as to the value attributed to the improperly employed element for the purpose of reducing the estimate by that amount, or, if it cannot be segregated, to insist that the witness' estimate be stricken. * * *"

Since the verdict of the jury was based upon evidence improperly received, the case must be reversed and remanded for a new trial. The parties' briefs did not

discuss separately the various instructions and requested instructions mentioned in the assignments of error, and we see no need to do so in this opinion.

Reversed and remanded for a new trial.