384 P.2d 480

The STATE of Idaho ex rel. Roscoe C. RICH, Ernest F. Gaffney and Wallace C. Burns, Idaho Board of Highway Directors, Plaintiffs-Appellants and Cross-Respondents,

v.

Milo HALVERSON and Ruth Halverson, his wife, Defendants-Respondents and Cross-Appellants.

No. 9225.

Supreme Court of Idaho.

Aug. 15, 1963.

Faber F. Tway, Chief Legal Counsel, Dept. of Highways, State of Idaho, Andrew M. Harrington, Boise, for appellants.

Stephen Bistline, Sandpoint, Thomas A. Mitchell, Coeur d'Alene, for respondents.

McQUADE, Justice.

This is an eminent domain proceeding brought by the State to condemn a tract of .23 acres owned by the respondents, Milo Halverson and Ruth Halverson, for highway purposes. This tract, herein sometimes referred to as the triangle tract, is located at the junction of U. S. Highway No. 95 and State Highway No. 1, some sixteen miles north of Bonners Ferry, Idaho; situate thereon is a building used for a service station, tavern and novelty shop. As such the property is being put to its highest and best use. Therefore, the dispute in this case centers around the amount of compensation the Halversons should receive for their property; the proper means by which the market value of the property may be established; and the right of the Halversons to receive additional damages for alleged loss in value of another non-contiguous parcel of land resulting from the taking by the State of the triangle tract.

For such additional damages defendants sought to prove that they were owners of a tract on which their home is situate. This tract, referred to as the home tract, is located south of the highway junction and is not contiguous to the triangle tract. Respondents sought to establish, by oral testimony, that they owned the home tract. The State objected to the admission of such testimony on the grounds that record title was the best evidence. When this objection was sustained, the respondents made an offer to prove that Milo Halverson and his two brothers purchased the property in 1947 and took title as tenants in common; that thereafter these owners entered into an agreement whereby this property and other property was divided; that pursuant to this agreement, the home tract was to be conveyed to Milo Halverson; and that due to surveying errors this conveyance had not been completed. The trial court denied the offer. Thereafter, respondents offered to prove that the damage to the home tract resulting from the taking of the triangle tract would be $4,000.00. This offer was also denied.

On the question of value of the triangle tract, Milo Halverson testified that in his opinion, the land and improvements had a fair market value of $30,000.00; Frank Lenhart, an oil products distributor testified over the objection of the State that in his opinion the fair market value of the property was $30,000.00. J. H. McNally, a banker, testified also over the objection of the State, that in his opinion the market value of the property was $28,000.00, and Dale Lee, a real estator, stated that in his opinion the property had a market value of $32,750.00.

Testifying for the State were C. Don Kerby and Ward Tifft, both appraisers. Kerby was of the opinion that the property had a market value of $14,000.00.

At the conclusion of the evidence the jury returned a verdict fixing compensation

to be allowed the Halversons for the triangle tract at $25,000.00. Respondents thereafter filed a motion for a new trial contending that the trial court erred in refusing to allow proof of damages to the home tract.

The State moved for a new trial contending the trial court erred in refusing to give certain requested instructions; in allowing Frank Lenhart to testify as to the value of the triangle tract because he was not qualified as an expert appraiser; in allowing cross examination of appraisers testifying for the State, by hypothetical questions when such questions were not based upon facts in evidence; and in allowing in evidence opinions of the market value by other witnesses of respondents when such opinions were based upon gross sales and income derived from the property.

The trial court denied the respective motions for a new trial and entered judgment in accordance with the verdict of the jury. The State appealed from the judgment and from the order denying a new trial. Respondents cross appealed from the order denying their motion for a new trial.

 The State contends that the trial court erred in overruling its objections to ، Lenhart's and Lee's opinions concerning the fair market value of the property upon the grounds that those witnesses were "not qualified to express such expert opinion" in that they were not familiar with property values in the area.

Lenhart testified that he had lived in Bonners Ferry for 32 years, during which time he was engaged in the garage, service station and wholesale petroleum businesses. In addition, Lenhart was a director of a Bonners Ferry Bank and served on that Bank's loan committee. Lenhart stated that he was not an appraiser but that he was familiar with the triangle tract and general property values in the Bonners Ferry area.

Lee, who resided at Sandpoint, Idaho, stated that he was an insurance broker and in the real estate business. While Lee had received no special formal training as an appraiser, he testified that he had previously appraised property on a number of occasions. Lee, in his real estate business, dealt with all types of property. Both Lee and Lenhart had personally inspected the property involved herein, in an effort to determine its market value.

In Idaho-Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod, 20 Idaho 568, 119 P. 60, 68 L.R.A.,N.S., 497, the following statement, equally applicable herein, appears:

"In the first place, appellant urges that the witnesses who were called on behalf of respondent to testify as to the value of the property to be taken and the damage that would be sustained were not qualified and competent to testify upon the subject of value. We do not consider that the objection is

well taken. The appellant had the privilege of cross-examining these witnesses which it exercised to the full extent, and this examination disclosed the extent of the knowledge and information that the several witnesses had on the subject of values, and the reasons which led them to make the estimates they did. The jury was competent, and, indeed, that was its province, to determine the weight to be given the evidence of the several witnesses on this subject. Evidence of value and damages in such cases as this should not be limited or confined to so-called expert witnesses; indeed, it could not be, for the reason that it would be practically impossible to tell just what would constitute an expert in such matters. A witness must necessarily claim to know something about the value of such property before he can fix any value, and the extent and value of that knowledge will be fully disclosed on cross-examination. The jury are well qualified to determine the weight to be given the evidence of the several witnesses after they have been cross-examined as to their means of knowledge and the sources of their information upon which they base their estimates."

Without deciding the question whether Lenhart and Lee were experts, it is sufficient to state that they were qualified to express an opinion concerning the market value of the triangle tract. See 159 A.L.R. 7 and cases cited therein. The qualifications of these witnesses were fully explored both on direct and cross examination. The determination of the weight to be given to their opinions, was for the jury. Idaho Western Ry. Co. v. Columbia Conference of Evangelical Lutheran Augustana Synod, supra.

■ Appellant also contends that the court erred in overruling its objection to the expression of an opinion by Lee and Lenhart as to the value of the triangle tract, because their opinions were "based entirely upon the profits of defendants' business." Lenhart testified that in forming his opinion he took into consideration the location of the property, the buildings, the nature of the business and the revenue produced by that business. In addition to the elements considered by Lenhart, Lee also noted that the respondents had a water right of value. While loss of profits is not an element of damages in a condemnation proceeding, income derived from a business is a factor which may be considered in arriving at the fair market value of property. 18 Am.Jur. Eminent Domain, § 260, p. 902; State ex rel. State Highway Commission v. Flynn, Mo.App., 263 S.W.2d 854, (rental income); State Roads Commission v. Novosel, 203 Md. 619, 102 A.2d 563; State v. Peterson, 134 Mont. 52, 328 P.2d 617.

248

In Harvey Textile Co. v. Hill, 135 Conn. 686, 67 A.2d 851, the following statement appears:

"In determining market values in awarding damages for land taken, it is proper to consider all those elements which an owner or a prospective purchaser could reasonably urge as affecting the fair market price of the land * * *. Determination of damages to be paid for taking of land in eminent domain proceedings requires consideration of everything by which value is legitimately affected."

In the case of State Roads Commission v. Novosel, supra, the issue raised by the State's assignment of error herein was considered. That court stated:

"As a practical matter, a prospective purchaser would hardly fail to consider whether or not the business conducted on the premises had proved profitable, for this would be a measure of the desirability of the location, if not to him then to other purchasers. The precise weight to be accorded to this factor is a matter of judgment on which experts may differ, and of this the jury is the final judge."

■ Appellant further contends the trial court erred in refusing to give its requested instruction concerning the testimony of expert witnesses. Appellant's requested instruction provided that "The testimony of an expert, as to his opinion, is not evidence of a fact in dispute, but is advisory only, * * *." This, and other portions of the said requested instruction were amply covered directly or indirectly by the trial court in Instructions No. 1, 3, 4, 5, 6, & 7. (Tr. p. 111, 112.)

■ The Halversons, in their cross-appeal, contend that the trial court erred in refusing to allow them to submit proof of damages to the home tract. In Sasso v. Housing Authority of the City of Providence, 82 R.I. 451, 111 A.2d 226, the Court considered the rule of the standard of unity of use necessary to sustain severance damages in the case of non-contiguous parcels of land. Therein appears the ruling which we approve:

"In such a case it is generally held that the two tracts can be considered as one only when they are so inseparably connected in the use to which they are applied that the taking of one *necessarily* and *permanently* injures the other. Darlington v. Pennsylvania R. Co., 278 Pa. 307, 123 A. 284; Essex Storage Electric Co. v. Victory Lumber Co., 93 Vt. 437, 108 A. 426. 4 Nichols Eminent Domain (3d Ed.), § 14.3, p. 426, § 14.31, pp. 431 et seq.; 29 C.J.S., Eminent Domain, §§ 140, 141; 18 Am. Jur., Eminent Domain, § 270, p. 910."

Cf. State ex rel. Rich v. Fonburg, 80 Idaho 269, 328 P.2d 60.

Respondents' offered proof was insufficient to establish the unity of use required to support a claim for severance damages. Accordingly, the trial court properly denied the offer.

After careful review of all assignments of error presented by these appeals, we conclude that the trial court committed no reversible error in the trial of the cause. Accordingly, the judgment is affirmed.

Costs to defendants-respondents and cross-appellants.

KNUDSON, C. J., and McFADDEN, TAYLOR and SMITH, JJ., concur.