City of Chicago, a Municipal Corporation, In Condemnation, Appellee, v. Herman O. Shayne, et al., Appellees.

The Chicago City Bank & Trust Company, Trustee, Trust #4462, Appellees, v. Francis S. Lorenz, Treasurer of Cook County, et al., Third Party Defendants.

Irving L. Butler and Willie Mae Atkinson, Action in Trespass, Appellants, v. Chicago City Bank & Trust Co., etc., et al., Appellees.

Gen. No. 49,170.

First District, First Division.

January 6, 1964.

Rehearing denied February 18, 1964.

Royal E. Spurlark, Jr., of Chicago, for appellants Irving L. Butler, et al.

John C. Melaniphy, Corporation Counsel, of Chicago (Sydney R. Drebin and Marsile J. Hughes, Assistant Corporation Counsel, of counsel), for appellee City of Chicago. Samuel W. Block and Thomas W. McNamara, both of Chicago (Thompson, Raymond, Mayer & Jenner, of counsel), for appellees.

MR. JUSTICE MURPHY delivered the opinion of the court.

This appeal arises from a consolidation of two cases in the trial court—an action for trespass commenced by appellants and a third party proceeding in a condemnation action, in which appellants were the third party defendants. In the trespass action, a $4,000 verdict and judgment was entered in favor of appellants and against the City of Chicago. In the third party defendant proceeding, the court directed a verdict against appellants for lack of proof of any fair market value of their leasehold interest. Appellants' appeal to the Supreme Court, on the ground of the invalidity of a statute, was transferred to this court.

On December 12, 1955, appellants Irving L. Butler and Willie Mae Atkinson entered into a lease with the Chicago City Bank & Trust Company, as trustee, for the rental of two floors at 1351 East 47th Street, to be used as a restaurant and tavern. The period covered by the lease was from June 1, 1956, to May 31, 1961 (without renewal privilege), at a rental of $250 a month until May 31, 1958, and $300 a month thereafter.

On August 25, 1960, the City of Chicago filed condemnation proceedings in the Superior Court of Cook County to condemn the building as part of a renewal plan. Appellants were not named, served, or represented in the condemnation case, in which a jury awarded the bank, as fee owner, the sum of $135,000

for the whole property. The City took possession of the property on January 31, 1961, by depositing the award with the County Treasurer.

. On February 9, 1961, appellants ceased doing business pursuant to notification by the City that they would have to close their tavern, in compliance with the Liquor Control Act (Ill Rev Stats 1959, c 43, § 130), which provides in part:

> "No alcoholic liquors shall be sold or delivered in any building belonging to or under the control of the State or any political subdivision thereof; . . ."

On May 18, 1961, appellants moved their property from the premises and surrendered their keys to the Community Conservation Board. They filed a claim with the Board for $2,611.01 for moving expenses and loss of fixtures and equipment and were allowed $2,496.18 on their claim, which amount was either paid them or disbursed at their request and direction.

On February 16, 1961, appellants filed a complaint in trespass in the Circuit Court of Cook County, seeking damages of $250,000 for the wrongful taking of their business, against the City of Chicago and others. On March 16, 1961, by petition, the Chicago City Bank & Trust Company, a defendant in the Superior Court condemnation proceeding, made appellants third party defendants in that proceeding, seeking an adjudication of appellants' claim, as tenants, to share in the condemnation award. Subsequently, both matters, by order of the Circuit Court, were consolidated for trial in the Superior Court. No objection to the consolidation order appears of record.

The consolidated cases were tried before a jury. In the condemnation matter, the trial judge directed a verdict in favor of the bank, as fee owner, because of

lack of proof of any fair market value of appellants' leasehold interests. In the trespass action, all parties except the City were dismissed before the commencement of the trial, and the jury returned a verdict of $4,000 against the City, upon which judgment was entered. This appeal followed.

Appellants' substantive contentions are: (1) that the condemnation did not terminate the lease and their contract right to operate a tavern was violated; (2) that the $4,000 verdict in the trespass action was grossly inadequate; (3) that the court erred in directing a verdict in the third party defendant proceeding; and (4) that they were prejudiced by trial errors and the consolidation of the actions.

■■ We consider, initially, appellants' contention that they had a vested property right in the operation of a tavern in the leased premises, which right was violated by the City's entrance on the premises. The nature of a license to sell liquor is stated in Hornstein v. Illinois Liquor Control Commission, 412 Ill 365, 369, 106 NE2d 354 (1952):

> "The statute provides: 'A license shall be purely a personal privilege, . . . and shall not constitute property, . . .' (Ill Rev Stats 1951, c 43, § 119.) The right to deal in intoxicating liquors is not an inherent right, but is always subject to the control of the State in the legitimate exercise of its police power. . . . Legislation with respect to liquor traffic does not come within the protection of the fourteenth amendment to the Federal constitution unless it is apparent that its real object is not to protect the community or to promote the general well-being but, instead, under the guise of police regulation, to deprive the owner of his liberty or property without due process of law."

37

A license to sell liquor is not a contract and creates no vested rights. It is merely a temporary permit to do what would otherwise be an offense against the law. (Schreiber v. Illinois Liquor Control Commission, 12 Ill2d 118, 122, 145 NE2d 50 (1957).) It is a condition of the license that summary action may be taken, if necessary. This applies in the present situation where the City terminated the liquor business in a summary fashion. The privilege of being in the liquor business was derived from the license and not the lease, and no contractual obligation under the lease was impaired by the city action.

In the trespass action, the City recognizes that it "exceeded its rights in extending the closing order to the barbecue business," but maintains plaintiff's use was curtailed only for the remaining term of the lease—four months. The City contends that the jury verdict of $4,000 is within the range of the damages established by appellants' evidence—a net income of approximately $1,100 a month for 1960, or $4,000 for the period involved.

■ The appellants argue, however, that the City's trespass warranted submission of exemplary damage instructions to the jury. The purpose of exemplary damages is not the compensation over and above actual damages sustained but to deter the commission of other acts. Exemplary damages are not a favorite in the law and will be allowed with caution and confined within narrow limits. Exemplary damages are recoverable only when the conduct is accompanied by aggravating circumstances, such as wantonness, willfulness, malice, fraud, or violence. (ILP, Damages § 132.) It is within the court's discretion to make this determination, and we find no abuse of that discretion here.

■ As to the third party proceedings, appellants contend that the City failed to notify and join them as

38

parties having right, title, or interest in the property involved in the condemnation proceeding and, therefore, they did not have a full opportunity to establish their leasehold rights. Appellants, however, do not show that they have been prejudiced by being brought into the proceedings at a later date. Therefore, our examination here is directed to the question of whether the directed verdict for the bank, as owner, was proper.

If leased property is taken or damaged, the lessee is entitled to recover his proportionate share, and the court should apportion the award between the lessor and the lessee. (McQuillin on Municipal Corporations § 32.85.) Generally it is held that the lessee is entitled to the reasonable value of the unexpired portion of the lease less the rent which would have been due to the lessor. If the rent reserved in the lease equals or exceeds market value, the lessee is entitled to nothing. Commercial Delivery Service v. Medema, 7 Ill App2d 419, 129 NE2d 579 (1955).

Appellants offered no evidence as to the value of the lease. The only affirmative testimony in the record as to the rental value of the premises for the period in question was adduced by the bank, as owner, and it showed that the maximum fair rental was from $250 to $300 a month. As appellants had the obligation to pay $300 a month, it cannot be said that the value exceeds the rental. Therefore, in the third party proceedings, the directed verdict in favor of the bank, as owner, was proper.

██ ██ Appellants complain of prejudicial trial errors. They contend the admission of a certified copy of a confession judgment entered against them for failure to pay precondemnation accrued rent was erroneous, as having no probative value. We find, however, the confession judgment has probative value on the question of rental value and on the credibility of

39

appellants' witnesses. We also find that the trial court did not err in refusing to permit the appellants access to the preliminary report of the City's appraiser. The court's ruling correctly applies the law stated in City of Chicago v. Harrison-Halsted Building Corp., 11 Ill2d 431, 436, 143 NE2d 40 (1957):

"The defendant was not entitled to the information sought by the discovery proceedings. The undisputed evidence is that the appraisals were made by the two witnesses as experts in the real-estate field at the request of counsel for plaintiff for his use in the trial. This being true, the evidence was privileged and need not be disclosed either at time discovery is sought or at the trial."

We see no error here.

█ Appellants contend that the actions were improvidently consolidated, thereby inherently depriving the appellants of jurors who could properly evaluate the two cases fairly. The relevant statute (section 51 of the Civil Practice Act) provides:

"An action may be severed, and actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right."

In Peck v. Peck, 16 Ill2d 268, 157 NE2d 249 (1959), our Supreme Court said (p 275):

"In construing this statute . . . we have held that the consolidation of separate causes for trial is discretionary with the trial court and our courts have found no abuse of discretion where the separate causes are of the same nature, arise from the same act, event or transaction, involve the same or like issues, and depend largely or substantially upon the same evidence, and when

40

a joint trial will not give one party an undue advantage or prejudice the substantial rights of any party."

We believe appellants do not show that the two actions are not within the guides above set forth, nor do we find that they have been prejudiced by the consolidation. We see no abuse of discretion here nor prejudice to the substantial rights of appellants. Also, we note the record does not show that appellants objected to the order of consolidation when entered.

■ As suggested by the City, the ultimate issue is whether the verdict and judgment are contrary to the manifest weight of the evidence. The City admits that it caused appellants some damage by closing their place of business on February 9, 1961. The determinative question on that issue is whether appellants have received just compensation. Appellants are not entitled to damages for the closing of their tavern, since that was compelled by the police regulation of the Liquor Control Act. Their right to damages is because the City extended its closing order to the barbecue business. The City did not take possession of the leased premises or any of appellants' stock. Uncontradicted testimony showed that the leasehold for the period in question had no fair market value in excess of the agreed rental under the existing lease.

Appellants' damages through the closing of their barbecue business was the profit they would have made between February 9, 1961, and May 31, 1961. The $4,000 verdict is the approximate quotient of the average daily profit shown by the 1960 income tax return multiplied by the number of days the City had compelled the appellants to close their business. While the profits of the barbecue business on the premises, without operation of the tavern in conjunction therewith, might not have been the same as before the sale

41

of liquor was banned, it is highly improbable that the profits would have exceeded those of the prior period.

In 15 ILP, Damages § 144, it is said:

> "Generally, where damages through the loss of business profits are sought, the loss consists of profits that would have been made had the wrongful act not been committed and the basis of measurement of the loss is the profit record for a reasonable period next preceding the wrongful act."

In the instant case, this is the basis on which the jury found the damages. Therefore, the verdict is not against the manifest weight of the evidence, nor do we believe that the jury, in its deliberations, was misled or prejudiced by any erroneous rulings of the trial court.

For the reasons stated, the orders and the judgment appealed from are affirmed.

Orders and judgment affirmed.

ENGLISH, P. J. and BURMAN, J., concur.