Argued December 7, 1964, reversed and remanded
March 17, 1965

# STATE HIGHWAY COMMISSION *v.* CENTRAL PAVING CO. ET AL

399 P. 2d 1019

*J. Robert Patterson,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Robert Y. Thornton, Attorney General; L. I. Lindas, Assistant Attorney General and Chief Counsel for the Oregon State Highway Commission, and Ted E. Barbera, Assistant Attorney General, Salem.

*Robert W. DeArmond,* Salem, argued the cause for respondents. With him on the brief was Fred W. Calef, Independence, Oregon.

Before McAllister, Chief Justice, and Perry, O'Connell, Denecke and Lusk, Justices.

O'CONNELL, J.

This is a condemnation action brought by the state of Oregon to acquire a parcel of land for highway purposes. Plaintiff appeals from a judgment of $4,500 in favor of defendants. The following statement of facts is adopted from the plaintiff's brief.

Defendants owned 3.73 acres of land upon which they conducted a sand and gravel business. The property is located a few miles west of the city of Salem and lies between the Willamette river on the south and the right-of-way of the Southern Pacific railroad on the north. A relatively small portion of the land is high and level; the remainder is generally low and slopes toward the river. Plaintiff condemned a 0.17 acre strip of the high ground for the construction and maintenance of a frontage road in connection with the widening, improvement and maintenance of the Willamina-Salem Highway as a throughway.

The Southern Pacific railroad right-of-way formed the property's northerly boundary and separated the property from the Willamina-Salem Highway, a conventional, two-lane highway. Although none of their property actually abutted upon the highway, the defendants had previously enjoyed access to the highway by means of a grade crossing over the railroad right-of-way. This access will be replaced by access to the frontage road to be constructed by the plaintiff from the easterly boundary of the defendants' property, thence in a westerly direction along the railroad right-of-way to a connection with the widened and improved highway at a point approximately 650 feet past the

westerly boundary of the defendants' property. At this point, left as well as right turns to and from the highway will be permitted as before. The frontage road will be paved, and the defendants will have an unrestricted right of access thereto at all points where it abuts their remaining property.

The first four assignments of error are based upon the trial court's action in denying plaintiff's motions to strike certain testimony of defendants' value witnesses. The motions to strike were made upon the ground that the testimony as to the value of the condemned property was based upon factors not properly includable in arriving at the valuation of property.

One of defendants' witnesses, Mr. J. R. Taggart, testified that in his opinion the market value of the land prior to the taking was $20,000 and that the value of the remaining land after the taking was $13,000. Upon cross-examination Mr. Taggart testified that he arrived at his estimate of the difference in valuation partly upon the basis of the increase in the hauling distance between defendants' property and the main highway resulting from the interposition of the frontage road and the consequent interference with defendants' direct access to the main highway.

Plaintiff moved to strike the testimony on the ground that the witness' estimate of value was based in part upon a non-segregable element of circuity of travel which is not a permissible factor in arriving at the amount of compensation for a taking under eminent domain. The motion was denied. The competency of testimony relating to circuity of travel was also raised by plaintiff's requested instruction to the effect that "nothing can be awarded in this proceeding on account of inconvenience caused by circuity of travel." Plaintiff also excepted to an instruction which

permitted the jury to consider the interference with defendants' access in determining the damage, if any, to the property not taken.

1. The cases are in disagreement as to whether a landowner can recover compensation for circuity of route resulting from the construction of a limited access highway. We adopt the view of those courts which deny recovery.[1]

Defendants' access to their property from the frontage road is the same as it was prior to the construction of the throughway. The construction of the throughway admittedly creates an impediment in travelling between defendants' land and the new highway. That impediment consists only of the inconvenience in being forced to travel a longer distance in going to and from the throughway.[2] The inconvenience resulting from travelling a more circuitous route is the same kind of inconvenience the general public suffers when there is a modification of certain traffic regulations on existing streets and highways. Thus, the public is

---

[1] E.g., Arkansas State Highway Comm. v. Bingham, 231 Ark 934, 333 SW2d 728 (1960); State v. Danfelser, 72 NM 361, 384 P2d 241 (1963), cert. den. 375 US 969, 84 S Ct 487, 11 L Ed2d 416 (1964); Selig v. State of New York, 10 NY2d 34, 217 NYS2d 33, 176 NE2d 59 (1961); Stefan Auto Body v. State Highway Comm., 21 Wis2d 363, 124 NW2d 319 (1963). In some of these cases the property owners maintained places of business on their property and sought to exploit the flow of traffic along the public highways. One writer has observed, however, that "what he is losing, in fact, is the benefit—entirely unearned by him—to his land of the commercially exploitable proximity of heavy traffic. Since he has no right to this benefit and has done nothing to create it, he should have little cause to complain at losing it." Covey, Frontage Roads: To Compensate or Not to Compensate, 56 NW U L Rev 587, 599 (1961).

[2] Defendants do not argue that they suffer a loss of business as a result of losing direct contact with the flow of traffic thus lessening the opportunity to commercially exploit those who use the public highways. See Covey, Frontage Roads: To Compensate or Not to Compensate, 56 NW U L Rev 587, 599 (1961).

forced to travel a more circuitous route upon the adoption of no-left-turn regulations or one-way-street restrictions. Defendants are not entitled to recover compensation for a loss unless they can show that the type of loss is peculiar to those owning land as distinct from the loss suffered by the general public. This they are unable to do in the present case.

2. Since we do not regard the limitation on defendants' access to their land from the throughway as the deprivation of an interest in land we need not decide whether, if it were, the state could appropriate the interest without compensation under the police power.[9]

Defendants argue that ORS 374.035 is controlling in this case.[10] ORS 374.035 provides in part that the state may acquire "any interest in real property including easements of air, view, light and access." As

_____

[9] For analyses of the police power with respect to limitations of access, see Covey, Frontage Roads: To Compensate or Not to Compensate, 56 NW U L Rev 587 (1961); Note, Freeways and the Rights of Abutting Owners, 3 Stan L Rev 298 (1951).

[10] ORS 374.035 provides as follows:

"(1) The State Highway Commission may, in the name of the state, acquire by agreement, donation or exercise of the power of eminent domain, fee title to or any interest in any real property, including easements of air, view, light and access, which in the opinion or judgment of the commission is deemed necessary for the construction of any throughway, the establishment of any section of an existing state road or highway as a throughway or the construction of a service road. The commission may accomplish such acquisition in the same manner and by the same procedure as real property is acquired for state highway purposes, except that in case the acquistion is by proceedings in eminent domain the resolution required under such procedure shall specify, in addition to other provisions and requirements of law, that the real property is required and is being appropriated for the purpose of establishing, constructing and maintaining a throughway.

"(2) A resolution adopted by the commission stating and setting forth that a proposed highway is to be constructed as a throughway is conclusive evidence that the highway when constructed is a throughway with all the characteristics and incidents prescribed by and provided for in ORS 374.005 to 374.095."

we have noted previously, the interest which defendants have in a more direct contact with the throughway is not an interest in land. Therefore, it is not within ORS 374.035.

Defendants rely upon *State Highway Commission v. Burk,* 200 Or 211, 265 P2d 783 (1954). The *Burk* case is distinguishable. There the new highway was constructed through the center of the owner's property, making it necessary for the owner to take a circuitous route to get from one parcel to the other. In such a case the owner *is* entitled to recover on the basis of severance damages rather than on the basis of a deprivation of a right of access.[9]

3. The trial judge should have given plaintiff's requested instruction and should not have given the instruction he gave. Further, it was error to permit the testimony of defendants' loss based in part upon circuity of route. Circuity of route was inextricably bound up with witness Taggart's estimate of the value of defendants' land after the taking. Counsel for plaintiff, in moving to strike the testimony, clearly identified the element of circuity of travel as the objectionable factor in Taggart's estimate. The trial court overruled the objection on the ground that a witness' testimony was not objectionable merely because "he can't exactly break it down in dollars and cents." A value witness need not attribute a value to each of the elements properly employed in reaching his ultimate estimate of value. However, if the estimate is based in part upon an element improperly employed, the estimate is not competent evidence and the state is entitled to inquire as to the value attributed to the

[9] Covey, Frontage Roads: To Compensate or Not to Compensate, 56 NW U L Rev 587, 594, n. 45 (1961); Note, Freeways and the Rights of Abutting Owners, 3 Stan L Rev 298, 308 (1951).

improperly employed element for the purpose of reducing the estimate by that amount, or, if it cannot be segregated, to insist that the witness' estimate be stricken. Therefore, the judgment must be reversed and the cause remanded for a new trial.

4-6. The state has raised other questions as to the competency of evidence of value which may arise upon a retrial of the cause. One of defendants' value witnesses testified that he based his estimate of value partly upon the cost of replacing the area of land taken by filling in adjacent land. One of defendants' witnesses indicated that in arriving at his estimate of damage resulting from the taking he had considered the increased possibility of vandalism with respect to defendants' property not taken. Neither of these factors are proper elements to consider in arriving at the amount of damages resulting from a taking of property by condemnation. One of defendants' witnesses testified that he based his estimate of value upon offers to purchase the property in question. Such evidence is not admissible to establish value.[©]

The judgment is reversed and the cause is remanded for a new trial.

---

[©] 1 Orgel, Valuation Under Eminent Domain, § 148 (2d ed 1953). Cf., State Highway Comm. v. Morehouse Holding Co., 225 Or 62, 357 P2d 266 (1960).