STATE ROADS COMMISSION OF MARYLAND *v.*
NOVOSEL ET AL.

[No. 71, October Term, 1953.]

620

*Decided February 10, 1954.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS and HENDERSON, JJ.

*Andrew W. Starratt, Jr., Special Attorney*, with whom were *Edward D. E. Rollins, Attorney General, Joseph D. Buscher, Special Assistant Attorney General*, and *James C. Morton, Jr., Special Attorney*, on the brief, for the appellant.

*Walter C. Mylander, Jr.*, with whom were *Henry A. Mylander* and *Marshall A. Binder* on the brief, for the owners of the reversionary interest.

*Louis M. Strauss*, with whom was *John H. Hopkins, IV*, on the brief, for the lessees.

SOBELOFF, C. J., delivered the opinion of the Court.

In a condemnation suit brought by the State Roads Commission to acquire a strip of land to widen the Revell Highway, the jury, after viewing the site and hearing testimony, made its inquisition and awarded the lessees of the property, Collier and wife, $8500, and the owners of the reversionary interest, Novosel and wife, $22,000. From judgment entered upon the jury's award, this appeal was taken by the Commission.

The area involved contains about .369 acres and was occupied and used by the Colliers as a restaurant and package liquor store on the north side of the Revel Highway about two miles west of the Chesapeake Bay

Bridge. The lease of the property, made in 1947, was for a ten-year period with a renewal privilege of ten years at a rental of $140 per month. It ante-dated the construction of the bridge; indeed, when the property was leased it was not certain that the bridge would actually come into being. The Revell Highway, now a modern dual highway linking the bridge with main traffic arteries to Baltimore and the South, was then only a single lane road. Favored by the volume of traffic from the bridge, from the subsequently established State Park nearby, and from recently constructed homes in neighboring real estate developments, the restaurant and liquor business increased in volume ten-fold and prospered. Coupled with these factors was the protection afforded by the zoning law which largely shielded this non-conforming use from competition.

The central question raised by this appeal is how and to what extent these circumstances may fairly be reflected in measuring damages for the taking.

*I.*

The State's chief complaint is against the appraisals made by the appellee Collier and his expert appraiser, Charles M. Bandiere. It is contended that these appraisals should have been excluded, as they were based upon business profits. The appellant concedes that it is proper to consider profits in computing damages from the taking of business property, but urges that profits should not be permitted to be the sole or principal consideration.

In the condemnation of an interest in land the law is careful to avoid the capitalization of profits derived from a business occupying such land; for that which is being taken and for which compensation is due is the land, and not the business. Business profits, it is well recognized, are no sure test of land value for they depend not only on location but on other factors; the same location may be fruitful of profit to one and not so to another. This does not mean, however, that in determining the value of the land no consideration is

to be given to its productive capacity which, in such circumstances as are present in this case, has an important bearing on value. 4 *Nichols on Eminent Domain* (3rd Ed.), Sec. 12.3121 [1]; 5 *Nichols*, Sec. 19.3 [1], and [4]; 1 *Orgel on Valuation under Eminent Domain* (2nd Ed.), Sec. 164.

As a practical matter, a prospective purchaser would hardly fail to consider whether or not the business conducted on the premises had proved profitable, for this would be a measure of the desirability of the location, if not to him then to other purchasers. The precise weight to be accorded to this factor is a matter of judgment on which experts may differ, and of this the jury is the final judge. In this case we find that Mr. Bandiere did inquire into the productivity of the premises, and particularly into the question of business profits, although in his testimony he was not permitted to give the figures. He did not, however, confine himself to profits for he testified, "I have made several visits to the property and measured the value of that type of business to the location with respect to vehicular traffic, the type of highway, the fact that the highway is a connecting link and is what has now become an eastern costal highway from Maine to Florida; I have considered the income of the lease; I have studied volumes of business, profits therefrom; I have studied the processes through which you evaluate leases and arrive at conclusions."

With the increasing vogue of leases of business property reserving rentals computed on a percentage of the volume of business transacted by the tenant, it would be artificial and illusory to reject an expert opinion of rental value that takes into account the volume of business which experience has shown a particular piece of property is capable of producing; and, of course, the resulting profits may be, if anything, even more pertinent to the question of value. We find no basis for the objection either to the testimony of the expert, or to that of the owner who as such, irrespective of other

qualifications, is permitted to give his estimate of the value of his holdings. *Bailey v. Ford,* 151 Md. 664; *Pennsylvania Threshermen & Farmers Mutual Casualty Ins. Co. v. Messenger,* 181 Md. 295, 302; *Jackson v. Linthicum,* 192 Md. 272, 276; 3 *Wigmore on Evidence* (3rd Ed.), Sec. 716.

It was entirely correct and legally admissible for the tenant to show the increase in rental value since the date of the lease and to claim compensation for the increase over the rental fixed in the lease.

*II.*

The appellant further objects that the Court should have excluded the expert's testimony relating to damages because his estimate, it is said, was not based upon the difference between the total fair market value of the entire property before the taking and the total fair market value of the part of the property remaining in the defendants after the taking. See *Realty Improvement Co. v. Consolidated Gas Electric Light & Power Co.,* 156 Md. 581, 588; *Pumphrey v. State Roads Comm.,* 175 Md. 498, 505; *Johnson v. Consolidated Gas, Electric Light & Power Co. of Baltimore,* 187 Md. 454, 469-470. It is not shown that the aggregate of the awards for the taking made to the owner and the tenant was in excess of the difference between the value before and after the taking. Mr. Bandiere's testimony was concerned more particularly with the value of the lessee's interest, for he was called as an expert for the tenant. Others had testified as to the aggregate damage for which the State was liable and to the problem of apportionment of the total award between landlord and tenant.

Parties and their witnesses quite naturally stress the factors which seem to them to support their contentions. The jury's function is to determine whether the emphasis sought to be given the facts in any of the testimony is correct, and they need not follow any witness' judgment as to the weight to be given to a particular factor in arriving at a valuation. Indeed, in the instant case the

jury seems to have exercised an independent and discriminating judgment, for in valuing the tenants' interest at $8500 they declined to follow exclusively the judgment of any single one of the witnesses, whose valuations ranged from a low of $2,000 to a high of $54,348.

### III.

We find nothing in the record to support the appellant's contention that the appellees' appraisals were made on the assumption that damages to the leasehold plus damages to the reversion could legally exceed the total damages that would be allowable for the same property if held under one ownership. Under these circumstances we need not concern ourselves with the question whether this is the type of case where the total of the awards to the owner and the tenant could properly be permitted to exceed the amount that the property would be worth in the hands of a single owner. Cf. *Gluck v. Mayor and City Council of Baltimore,* 81 Md. 315, 321; *Mayor and City Council of Baltimore v. Latrobe,* 101 Md. 621; *Mayor and City Council of Baltimore v. Gamse,* 132 Md. 290, 293.

### IV.

Marion Cox, whose qualifications as a real estate expert are conceded by the appellant, in discussing the comparability of sales of land in the immediate neighborhood, was permitted to give an opinion as to the cost of excavating earth and how much should be allowed for excavation necessary to make the land remaining after taking available for use. The appellant insists that as Mr. Cox was not shown to have expert knowledge as to the cost of excavating land he should not have been permitted to testify to this. We see no ground for complaint on this score. As a real estate expert it was perfectly competent for him to recognize what appeared to him to be a possible defect in the property and, after informing himself by inquiry as to the cost of remedying this condition, to make suitable allowance in computing the value of the property. An expert may be one who is trained in assembling and evaluating information in

allied fields in which he lacks the same first-hand knowledge that he possesses in his own specialty. All that Mr. Cox did falls well within his area of expertness, and it would have been in order for the State to challenge his figures and, if it could, to offset them by opposing testimony.

## V.

The appellant also asserts that it was error for the Court to state in the jury's presence that the condemnation of the property meant that the proprietor of the business lost his right to operate. We do not see how this statement of an obvious fact could have prejudiced the jury against the appellant, especially as throughout the trial the Judge made it clear that the jury was to allow only for the value of the respective interests in the real estate and not for the loss of the business. Indeed, at the outset of the trial the parties themselves in terms stipulated: "It is hereby stipulated that the taking of a portion of the property of the defendant Novosel herein constituted a taking of substantially all that portion of the property covered by the lease, dated June 30, 1947, * * * to Herman O. Collier and wife and that the legal effect thereof is the termination of the said lease as of the time of the said taking, and that said lease is cancelled as of said taking."

Finding no error, the judgment will be affirmed.

*Judgment affirmed with costs.*