490 P.2d 323

The STATE of Idaho ex rel. R. Doyle SYMMS et al., Plaintiff-Appellant,

v.

V–I OIL COMPANY, an Idaho Corporation, Defendant-Respondent.

Nos. 10580, 10829.

Supreme Court of Idaho.

Nov. 4, 1971.

Faber F. Tway, Chief Legal Counsel for Idaho Department of Highways, Boise, for plaintiff-appellant.

Albaugh, Bloem, Smith & Pike, Idaho Falls, for defendant-respondent.

SHEPARD, Justice.

This appeal results from a jury trial and verdict and a judgment thereon in an eminent domain action for the condemnation of real property for highway construction. The land consists of slightly less than one-quarter of an acre and had been used for many years as the site of an independent retail gas station. The jury returned a verdict for $90,060. Plaintiff's motion for judgment notwithstanding the verdict was denied, judgment was entered and this appeal resulted. For reasons stated herein, we reverse the judgment of the district court and remand the case for new trial.

The tract of land in question herein is owned by defendant-respondent which in turn appears to be almost solely owned and is managed by one Sam Bennion. The entire thrust of appellant's assignments of error involves the testimony of Bennion regarding alleged profits derived from the operation of the gas station during years preceding the condemnation action and the utilization of the alleged profit figures by expert testimony to arrive at a so-called market value.

During the course of the trial plaintiff objected to, or moved that there be stricken, the testimony of defense witnesses on the grounds that the testimony included elements which were not compensable under the law of eminent domain. All of said objections or motions were denied by the district court. The testimony was thus before the jury and, we must conclude, influenced the verdict. In addition to other testimony Bennion specifically stated that the net profit of the gas station during the previous five years had been between $1200 and $1600 per month and that the profit for the previous two years had been in excess of $18,000 per year. Bennion also represented that there had been "gas wars" for only a small percentage of time during the previous years and that the station was returning a good stable figure on his investment. As stated, a jury verdict was returned, judgment entered and this appeal was commenced.

During the pendency of the appeal, plaintiff-appellant learned that in 1968, approximately one year prior to the trial in the instant case, the defendant-respondent had filed an action in the Federal Court in the State of Utah against Phillips Petroleum Company alleging improper competition under the Sherman and Robinson-Patman Acts. In connection with that case the deposition of Bennion was taken wherein he stated (supported by profit and loss statements) that the same gas station site involved herein had incurred substantial losses ranging between $5,000 and $8,000 per year and also that "gas wars" had been in existence between 80 and 90% of the time during the period involved. Upon the discovery of these facts plaintiff-appellant herein moved to remand jurisdiction of the cause to the district court. This court granted that motion. Following the remand, a motion was made in the district court to vacate the judgment and grant a new trial. That motion was denied by the district court and the case was returned to this court. Plaintiff-appellant also assigns as error the denial of its motion for vacation of judgment and for a new trial.

Rule 60(b) I.R.C.P. states:

"On motion and upon such terms as are just, the court may relieve a party or his

**458**

legal representative from a final judgment, order, or proceeding for the following reasons: * * *

"(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; * * *."

Since adoption of this rule in 1958 this court has considered that subsection only in Willis v. Willis, 93 Idaho 261, 460 P.2d 396 (1969). In *Willis* it was sought to vacate a judgment in a divorce case on the grounds of perjury. We held therein that the party seeking the vacation of the judgment had not shown by clear and convincing proof that perjury had occurred in the trial and also that the moving party had in the interim accepted the benefits of the divorce decree. We hold that the "clear and convincing" standard set forth in *Willis* has been satisfied in the case at bar.

In Peacock Records, Inc. v. Checker Records, Inc., 365 F.2d 145 (7th Cir. 1966), the court stated:

"We hold that where it appears that perjured testimony may have played some part in influencing the court to render a judgment, the perjury will not be *weighed,* on a motion to set aside the judgment. This seems self-evident. The factual question which the district court failed to answer is, 'Was the judgment obtained in part by the use of perjury?' [Citations omitted] If it was, then it was clearly the duty of the district court to set aside the judgment, because poison had permeated the fountain of justice. Thus, in that event, this taint had affected the entire proceeding in the court below, although we find no indication that any counsel herein was a party to any wrongdoing." 365 F.2d 145, 147. (Emphasis in original.)

The court then quoted with approval from Parker v. Checker Taxi Company, 238 F.2d 241 (7th Cir. 1956):

"The inherent right of the court to vacate a judgment for fraud, as stated above, is strengthened by Rule 60(b), Federal Rules of Civil Procedure 28 U.

S.C.A., which provides that on motion the court may relieve a party from a final judgment or order for fraud, misrepresentation, or other misconduct of an adverse party." 238 F.2d 241, 243.

The court in Atchison, Topeka and Santa Fe Railway Co. v. Barrett, 246 F.2d 846 (9th Cir. 1957), stated:

"Judgments obtained through fraud, misrepresentation or other misconduct should be vacated, by use of Rule 60(b) of the Federal Rules of Civil Procedure. That rule is remedial and should be liberally construed. Where perjury has played some part in influencing the court or jury to render a judgment, the effect of the perjury will not be weighed on a motion to set aside the judgment." 246 F.2d 846, 849.

We find the analysis and language of said courts to be persuasive herein. See also 3 Barron & Holtzoff, Federal Practice & Procedure, § 1326, p. 408. An analysis of the case at bar can lead only to the conclusion that a new trial must be had on the issue of damages. The testimony of Bennion in either the Idaho or the Utah case was obviously and uncontrovertedly false and in the case at bar can only be assumed to have been given intentionally for the purpose of affecting the jury verdict.

The profit and loss statements are unequivocal and supposedly authenticated. The testimony of Bennion was used repeatedly as a basis for estimates of value given by various other expert witnesses in the trial below. The probability that such testimony tainted the verdict of the jury is obvious. We will not attempt to weigh the effect of the fraud upon the verdict; rather, the mere existence of fraud, taken together with the probability of influence resulting therefrom, is sufficient to require vacation of the judgment and a new trial. We emphasize as did the court in *Peacock Records* that we find no indication that counsel was a party to any wrongdoing.

Since a new trial is to be held, we deem it advisable to comment on plaintiff-appellant's other assignments of error which re-

late to the admissibility of testimony of the alleged profits resulting from a business conducted upon the land sought to be condemned.

 Plaintiff-appellant contends it to be well settled that evidence of profits of a business conducted upon land to be taken through eminent domain is not admissible in proceedings to determine the just compensation to be awarded the owner. 4 Nichols, Eminent Domain, Section 175 (2d Ed.); Cf., State ex rel. Rich v. Halverson, 86 Idaho 242, 384 P.2d 480 (1963), and Idaho Farm Development Co. v. Brackett, 36 Idaho 748, 213 P. 696 (1923).

The witness Bennion was interrogated at length on direct examination regarding rental income received from leasing the property and the going business thereon to another petroleum products distributor. He was also interrogated at length regarding the profits received from its own operation of the going business located upon the property. To that entire line of questioning plaintiff-appellant raised but one objection. Thereafter on cross-examination and recross-examination counsel for plaintiff-appellant extensively interrogated Bennion regarding those same profits. The record further reveals that the defense witness Manwaring based his estimates of market value in large part upon the profits received from the going business conducted upon the property. Counsel for plaintiff-appellant raised no objection during the course of that testimony. At the close of defendant's case plaintiff moved that the testimony of the witnesses Bennion and Manwaring be stricken "on the ground and for the reason that the testimony as to the value of the property from both witnesses included elements which under the law are not compensable * * *." The trial court denied that motion.

We hold that the trial court was correct in its denial of plaintiff's motion for the striking of the testimony of the value of the property given by witnesses Bennion and Manwaring. Although their testimony

may have, and probably did, include the elements of profits to a going business conducted upon the property sought to be condemned, it also included elements of location, desirability, and rental income. Testimony of those elements was admissible and proper as a basis of opinion testimony of value, and proper for the jury's consideration. Direct testimony of past profits from a going business conducted on land sought to be condemned is not ordinarily admissible except in the most unusual cases, of which the case at bar is not one. 1 Orgel, Valuation under Eminent Domain § 155 et seq. (2nd Edition); Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S. Ct. 1434, 93 L.Ed. 1765 (1949); Matter of State Reservation at Niagara, 16 Abb. N.C. (N.Y.) 159 (1884), aff'd, 37 Hun 537, 16 Abb. N.C. (N.Y.) 395 (1885). Plaintiff-appellant, however, did not raise objections to most of the testimony nor did it ask for a continuing line of objection to the testimony. It may well have waived its sole and initial objection by its interrogation of the witnesses on cross and recross-examination.

The State in the case herein is not condemning a going business. It is merely condemning a parcel of land. In such cases, the business may be and in the case at bar was transferred to another piece of property. As hereinabove stated, only in the most exceptional cases involving the most unusual properties is direct evidence of the profits of a going business probative of the market value of the land. As stated in the authorities:

"If the owner of property uses it himself for commercial purposes, the amount of profits from the business conducted upon the property depends so much upon the capital employed and the fortune, skill and good management with which the business is conducted, that it furnishes no test of the value of the property." 4 Nichols on Eminent Domain, supra. See also 27 Am.Jur.2d, Sec. 285, p. 83.

The judgment of the district court is reversed and the proceeding is remanded for

**460**

a new trial consistent with this opinion. Costs to appellant.

McQUADE, C. J., and McFADDEN, and DONALDSON, JJ., concur.

SPEAR, J., sat but retired prior to decision.