546 P.2d 399

The STATE of Idaho ex rel. Carl C. MOORE
et al., Plaintiffs, Appellants and
Cross-Respondents,

v.

Arlon L. BASTIAN and Una Bastian, hus-
band and wife, Defendants, Respond-
ents and Cross-Appellants,

and

Albertson's, Inc., Defendants and
Respondents.

Nos. 11720, 11762.

Supreme Court of Idaho.

Feb. 17, 1976.

**446**

Anton Hohler, Legal Counsel, Boise, for appellants.

Lloyd J. Webb of Webb, Pike, Burton & Carlson, Twin Falls, for Arlon and Una Bastian.

Richard R. Reed of Doerr & Reed, Twin Falls, for Albertson's, Inc.

SHEPARD, Justice.

This is an appeal from a judgment following jury trial in an eminent domain action. The action was brought on behalf of the State of Idaho to condemn certain real property in the city of Twin Falls for the purpose of improving a portion of the state highway system. The property sought to be condemned was a small portion of a parcel of land owned in fee by defendants Arlon and Una Bastian. The tract was used as a grocery supermarket and parking lot by Albertson's, Inc., who leased it from the Bastians.

The property was bounded on the south by Addison Avenue and on the west by Washington Street, both of which streets were to be widened for the accommodation of additional lanes of traffic. The property is bounded on the east by Adams Street and on the north by an alley.

The total property consists of approximately 44,388 sq. ft., extending approximately 280 ft. along Addison Avenue and 160 ft. along Washington. The State sought to condemn approximately 8,466 sq. ft. of the property consisting of a strip approximately 21 ft. wide along Addison and approximately 11 ft. wide along Washington.

There is no dispute but that the State is required to pay just compensation not only for the value of the strip of land actually taken, but is also required to compensate for damages, if any, which that severance will cause to the remainder portion of the property. Idaho Constitution art. I, § 14; I.C. § 7–711; *Big Lost River Irrigation District v. Zollinger*, 83 Idaho 401, 363 P.2d 706 (1961). In addition to defendants' claims for compensation for the property actually taken and the damages accruing to the remainder, however, they also sought damages for the depreciation in the value of the remainder land by reason of expected traffic diversion from controls which the State proposed to place on both Addison and Washington in concert with the widening process. The State proposed to construct a raised center-line median along Addison Avenue, which median would prohibit traffic on that street from turning left across the flow of traffic at any point except at the street intersections. On Washington Street the State proposed to paint a yellow, double-line median, the effect of which the trial court never resolved, despite objections and argument thereon. In our view that question is not material, as in any event all traffic could nevertheless reach defendants' property from either Washington or Addison by travelling no more than one-half to two blocks around the property.

Defendants tendered evidence to show that these traffic control devices would discourage customer patronage at the Albertson's store and thus injure the value of land remaining following the actual take.

To the admission of that evidence the State unsuccessfully objected arguing that such was merely a police power regulation and hence any damages which resulted would be noncompensable. The evidence of both defendants relating to damages to the remaining property following severance of the part actually taken was based in part on the impact of these median traffic control devices. The State requested an instruction advising the jury not to award damages for any injury they might find to have been caused by the construction of these traffic control devices, but that instruction was refused. We hold that the denial of the State's requested instruction was prejudicial error. The taking of defendants' property through the process of eminent domain and the consequent damage to the remaining property had no necessary relationship to the median construction. The placement of the medians and any consequent injury such might cause are the results of an exercise of the State's police power rather than a taking under its power of eminent domain. As stated in *State v. Ensley*, 240 Ind. 472, 164 N.E.2d 342 at 349 (1960):

"The widening of the highway followed by its subsequent transformation into a highway with a divider strip in the center, though contemporaneous with and part of the same construction program, are separate improvements with respect to the appropriation of appellee's property."

See also *Walker v. State,* 48 Wash.2d 587, 295 P.2d 328 (1956); see also *Johnston v. Boise City,* 87 Idaho 44, 390 P.2d 291 (1964); and *Smith v. State Highway Commission,* 185 Kan. 445, 346 P.2d 259 (1959). As stated in *Johnston*:

"* * * The court must weigh the relative interests of the public and that of the individual, so as to arrive at a just balance in order that government will not be unduly restricted in the proper exercise of its functions for the public good, while at the same time giving due effect to the policy of the eminent domain clause of insuring the individual against *unreasonable loss* occasioned by the exercise of governmental power." 87 Idaho at 53, 390 P.2d at 295.

Courts have traditionally recognized that governmental acts primarily concerned with public safety and arbitration of social conflict are entitled to great weight in that scale. While it is true that defendants have a property interest in access to public streets, *Weaver v. Village of Bancroft,* 92 Idaho 189, 439 P.2d 697 (1968); *Mabe v. State,* 83 Idaho 222, 360 P.2d 799 (1961), nevertheless not all impairments of that right by the State are compensable or per se unreasonable. *James v. State,* 88 Idaho 172, 397 P.2d 766 (1964); *Breidert v. Southern Pacific Co.,* 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719 (1964). That right of access does not encompass a right to any particular pattern of traffic flow or a right of direct access to or from both directions of traffic and we find no compensable impairment of access here. All who wish to reach defendants' property could do so with relatively minor inconvenience. *James v. State, supra; Mabe v. State, supra; State v. Ensley, supra; Walker v. State, supra;* see also *Snyder v. State,* 92 Idaho 175, 438 P.2d 920 (1968); Hagman, *Urban Planning,* pp. 325, 326 (1971); Sax, Takings and Police Power, 74 Yale L.J. 36 (1964).

Although the error above discussed is prejudicial and requires reversal, other issues raised in appeal require discussion to prevent the repetition of error upon remand. The jury was instructed that compensation for the strip of land actually taken (as contrasted to the severance damages which would result to the remaining land) was "the difference between the market value of the entire parcel of land before the taking and the market value of the remainder after the acquisition * * *." Such was incorrect. I.C. § 7–711; *State v. Dunclick, Inc.,* 77 Idaho 45, 286 P.2d 1112 (1955); see also *Big Lost River Irrigation District v. Zollinger, supra.*

448

It was the State's theory of the case at trial and is its theory on appeal that the compensation for the value of the land taken and the damages to the remaining property by reason of severance should be assessed in total and only thereafter should that total award be apportioned between the lessor Bastian and the lessee Albertson's. The State sought a jury instruction to that effect, but it was denied. The denial of that instruction was error. *Great Atlantic & Pacific Tea Company v. State*, 22 N.Y.2d 75, 291 N.Y.S.2d 299, 238 N.E.2d 705 (1968); *State v. Burk*, 200 Or. 211, 265 P.2d 783 (1954); McQuillan on Municipal Corporations § 32.85 (3d ed. 1964); 4 Nichols, Eminent Domain § 12.42 (3d ed. 1975). The mere fact that ownership of land is divided among different persons and of owners of various interests in the title including leasehold does not in and of itself enhance the value of the property. 4 Nichols, *supra*; 1 Orgel, Valuation Under Eminent Domain, § 107 (2d ed. 1953).

At trial the expert witness testifying on behalf of Albertson's indicated opinion as to the value of Albertson's leasehold interest in the property and the damage that would result thereto. He computed those damages by comparing capitalized and discounted net profits prior to the taking of the property with those to be expected after the taking of the property. The State argues that such type of testimony allowed Albertson's compensation for its lost profits as well as for the damage resulting from the taking of the property. *See State v. V–1 Oil Company*, 94 Idaho 456, 490 P.2d 323 (1971); *City and County of Denver v. Hinsey*, 177 Colo. 178, 493 P. 2d 348 (1972); 1 Orgel, Valuation Under Eminent Domain § 155 et seq. (2d ed. 1953); 4 Nichols, Eminent Domain § 12.-312(1) (3d ed. 1975). We do not agree that such result necessarily followed in the case at bar. Albertson's as lessee of the property, a portion of which was taken herein, is entitled to be compensated for the damages resulting to the fair market value of its leasehold interest. I.C. § 7–711; see Annot., 3 A.L.R.2d 286 (1949). The fair market value of Albertson's interest in the property is the amount of money that a reasonably prudent purchaser would normally pay for such leasehold interest considering the rental obligation that they would thereby assume. *City of Chicago v. Shayne*, 46 Ill.App.2d 33, 196 N.E.2d 521 (1964); *Onego Corp. v. United States*, 295 F.2d 461 (10 Cir. 1961); Note, Eminent Domain, Compensation for Leasehold Interest Where No Provision in Lease, 48 Marq.L.Rev. 90 (1964); Annot., 3 A.L.R. 2d 286 (1949).

Although the loss of business profits are not compensable as such in eminent domain actions, evidence thereof may be admissible if it bears upon the fair market value of property actually taken and the severance damage to the remainder. See *State v. Halverson*, 86 Idaho 242, 384 P.2d 480 (1963); *State v. Dunclick, Inc., supra*; *State Roads Commission v. Novosel*, 203 Md. 619, 102 A.2d 563 (1954). The record demonstrates that the method of the expert witness herein is one commonly used to determine fair market value. The record further discloses that the focus of that expert testimony at trial was always the fair market value of the leasehold not merely the loss of profits. The witness testified that a reasonably prudent purchaser of the Albertson's leasehold interest might well capitalize the net profits arising from the business, but thereafter discount the figure as he had in several ways. Additional or more lengthy consideration of the methodology used herein is unnecessary other than to observe that in our opinion the risk of improper compensation being awarded to Albertson's as a result thereof was minimal. See 1 Orgel, *supra*; American Institute of Real Estate Appraisers, The Appraisal of Real Estate, pp. 409–416 (4th ed. 1964); Horgan Leasehold Valuation Problem in Eminent Domain, 4 U.S.F.L.Rev. 1 (1969).

As we have previously noted, however, the opinion testimony of witnesses for Albertson's, Inc., in their estimate of damages included those which might or would result from the above mentioned traffic control device medians. Such elements of damage may not be considered. Albertson's has and will retain the burden of showing their damages resulting from the actual take and the severance. *State v. Dunclick, Inc., supra*; *State v. McGill*, 79 Idaho 467, 321 P.2d 595, 73 A.L.R.2d 613 (1958). On retrial if those expert witnesses cannot eliminate that portion of the damages which is noncompensable, i. e., that portion resulting from the establishment of traffic control medians, then and in that event their testimony must be stricken and the jury advised to disregard it in its entirety. *State Highway Commission v. Central Paving Co.*, 240 Or. 71, 399 P.2d 1019 (1965); see also *Mabe v. State*, 86 Idaho 254, 385 P.2d 401 (1963); *State v. Ness*, 516 P.2d 1212 (Alaska 1973); *Rose v. State*, 19 Cal.2d 713, 123 P.2d 505 (1942).

The Bastians assert error in the admission of certain evidence. At trial, defendants Bastian and Albertson's had claimed that the land remaining following the actual take could no longer be utilized as a grocery supermarket because of alleged inability to make truck delivery. Defendants asserted that the supermarket was so designed and constructed as to require truck delivery at a part of the building. It was asserted that the taking of the property combined with the highway construction along Addison Avenue would prohibit truck parking and delivery at the usual delivery site and a large amount of damage would allegedly be caused therefrom. The plaintiff State countered with evidence of alleged alternative areas of truck parking and delivery along Adams Street or in the parking lot north of the store. The defendants Bastians argued that the State's proposed remedy would be impossible because of two ordinances of the city of Twin Falls purportedly prohibiting such parking for unloading and delivery as suggested by the State's evidence.

One of those city ordinances prohibits unloading or parking on a sidewalk or within 20 feet of an intersection. It is not apparent from the record that the proposals contained in the State's evidence would pose any violation to that ordinance. The second ordinance requires "adequate off-street * * * unloading space." Neither does that ordinance clearly prohibit the proposals made by the State's testimony to remedy the parking and truck delivery problems. It was incumbent upon the party asserting the illegality of the proposals (the Bastians) to clearly demonstrate that the proposals of the State were offensive to the ordinance and prohibited thereby and obtain a ruling to such effect from the trial court. In the absence of such clear demonstration by defendants that the proposals are illegal we presume they are not offensive to the ordinance. See I.C. § 18–109; *State v. Burns*, 53 Idaho 418, 23 P.2d 731 (1933); *Texas Company v. State*, 198 Okl. 565, 180 P.2d 631 (1947).

The following matter was not raised by the parties on appeal, however, the Court deems its reversal and remand in this case for new trial to require additional prophylaxis. In Idaho, the value of the property actually taken in an eminent domain proceeding and the damages which will accrue to the remaining property by reason of the severance are computed as of the date of the issuance of the summons, not the date that the property is actually taken. I.C. § 7–712. The leasehold interest of Albertson's in the property had a five year period of time remaining if calculated as of the date of the summons. Although the record is not entirely clear whether the property sought to be taken by the State has as yet passed into the hands of the State, such did not occur for at least three years after the date of the summons. In the ordinary eminent domain case involving an undivided fee ownership of land no particular problem would be

posed. Here, however, we may not presume any damage to Albertson's leasehold estate until their real property interests have actually been invaded. Assuming those interests were not invaded and their property interest not damaged until three years following the date of the summons, then rather obviously Albertson's would be allowed a windfall if the damages to the leasehold were computed on the basis of a depreciation in value for five years rather than being computed on the basis of a depreciation in value spanning only two years.

We have said that upon remand the jury must arrive at a total award of damages to the real property and thereafter apportion such damages between lessor Bastian and lessee Albertson's. It must follow, therefore, that if Albertson's receive more than their due share of the total award by way of windfall, the Bastians must inevitably receive less than their fair share. Accordingly, on remand we direct that as to the apportionment of the total award between lessee and lessor the jury under I.C. § 7–712 shall value the leasehold according to its value as of the date of the summons. But the date of the actual take and its impact, if any, on the fair market value on the lease shall be considered as information available to any reasonably prudent purchaser; i. e., although a reasonably prudent purchaser will be assumed to be interested and desirous of purchasing Albertson's five year leasehold interest as of the date of summons, he will be deemed to know that the leasehold interest will continue uninterrupted for at least three years. Evidence by experts offered to establish the fair market value of Albertson's leasehold estate as of the time of the summons shall include consideration of the above mentioned information.

If the risk of windfall under such circumstances would inure only to the detriment of the State, we might hesitate to make such holding. Such risk may be deemed to be inherent at any time that the State seeks to condemn real property of its citizens. But as stated, the risk here inures to the detriment of the Bastïans. In any event, in future cases it would appear that the State has now been granted additional procedural measures by the legislature which will prevent reoccurrence of windfall problems. See Ch. 141, Séssion Laws 1975, amendatory to I.C. § 7–721. On remand if it appears at trial that the actual taking of the property and consequent damages to the remainder has not then occurred, in the absence of stipulation of when it will in fact occur, the operative date of the taking and consequent damages will be deemed to occur at the date of the trial resulting from the remand hereof.

Judgment reversed insofar as it concerns the award of damages to the defendants herein and the cause is remanded for further proceedings consistent with this opinion.

No costs allowed.

McQUADE, C. J., and McFADDEN, J., concur.

DONALDSON, Justice (concurring in part and dissenting in part).

I dissent from that portion of the majority's opinion which would exclude testimony and evidence relating to interference with the defendants' right of access from the jury's consideration in ascertaining severance damages. In my opinion possible damages resulting from the construction of median traffic control devices limiting access on two sides of defendants' property were a proper matter for the jury's consideration.

The right of access of a property owner to an abutting public street has long been the subject of judicial discourse in Idaho. A thorough review of authorities reveals it is a right which Idaho courts have been particularly careful to protect. In *State v. Fonburg*, 80 Idaho 269, 328 P.2d 60 (1958), this Court held:

"Where a part of the owner's contiguous land is taken in a condemnation

proceeding, all inconveniences resulting to the owner's remaining land, including an easement or access to a road or right of way formerly enjoyed, which decrease the value of the land retained by the owner, are elements of severance damage for which compensation should be paid. [Citations omitted.]"

Nor is interference with access merely an element of severance damages to be considered in an action for condemnation, but is in itself a property right, the taking of which may be compensated in an action for inverse condemnation, that is "whether or not accompanied by a taking of physical property." *Hughes v. State,* 80 Idaho 286, 328 P.2d 397 (1958); *Mabe v. State,* 83 Idaho 222, 360 P.2d 799 (1961) (second appeal, 86 Idaho 254, 385 P.2d 401 (1963)).

The Court in *Hughes,* after undertaking an extensive review of the authorities concluded:

"* * * and since such right of access constitutes an interest in, by virtue of being an easement appurtenant to, a larger parcel, the court, jury or referee must ascertain and assess the damages which will accrue to the portion not sought to be condemned by reason of the severance of the portion—the right of access—sought to be condemned, and the construction of the improvement." 80 Idaho at 295, 328 P.2d at 402.

The majority asserts that the "right of access does not encompass a right to any particular pattern of traffic flow or a right of direct access to or from both directions of traffic" and would deny compensation here on that basis. They cite *James v. State,* 88 Idaho 172, 397 P.2d 766 (1964) and *Mabe v. State, supra,* as authority. In both these cases the landowner claimed he was entitled to damages where the traffic flow on the street abutting his

property was reduced by construction of a new highway which attracted some of the traffic. In neither case was the right of access to the abutting street itself in any way impaired. In denying a remedy, the Court in *James* pointed out that these cases "involved an alleged loss of access to the general highway system itself and [did not involve] any alleged loss of access from the appellants' property to the abutting roadway." The Court continued by holding that where a property owner seeks damages for impairment of access to "the general system of public streets," rather than access to an abutting street, he must show a "substantial impairment" of his right of access. Citing *Breidert v. Southern Pacific Co.,* 61 Cal.2d 659, 39 Cal. Rptr. 903, 394 P.2d 719 (1964).

The present case does not involve diversion of traffic occasioned by the creation of a new highway nor an asserted loss of access to the "general system of public streets" but a direct interference with the right of access to an abutting highway. Interference with that right is a proper matter for the jury to consider in assessing severance damages and I would so hold. The statute, I.C. § 7–711(2) contemplates that the jury shall consider in assessing severance damages "the construction of the improvement in the manner proposed by the plaintiff" which includes a consideration of the effect of the median traffic control device which was a part of the proposed construction. For the majority to hold otherwise they must slip a great deal of Idaho authority up their judicial sleeve, a bit of legal legerdemain which results in the abandonment of a long tradition of judicial protection of the rights of property owners.

BAKES, J., concurs.