541 P.2d 617

**Glenn E. HESTON and Pearl Heston, Plaintiffs-Respondents,**

v.

**Russell PAYNE and Robert Payne, Jr., d/b/a Payne's Flying Service, Defendants-Appellants.**

**No. 11590.**

Supreme Court of Idaho.

Oct. 16, 1975.

---

Daniel W. O'Connell, Ware, Stellmon & O'Connell, Lewiston, and Wilfrid W. Longeteig, Strom & Longeteig, Craigmont, for defendants-appellants.

John Reid Tait, Paul C. Keeton, Chartered, Lewiston, for plaintiffs-respondents.

BAKES, Justice.

In November of 1972, the plaintiff respondent Glenn E. Heston, a tenant farmer, and his mother, the plaintiff respondent Pearl Heston, whose land he was farming, brought suit against the defendant appellants Russell Payne and Robert Payne, Jr., brothers doing business as Payne's Flying Service. The plaintiffs alleged that on May 28, 1972, Robert Payne had applied the herbicide 2–4–D to a crop of a nearby farm, that he had not taken adequate precautions to prevent the herbicide from damaging other crops in the vicinity, and that 2–4–D which Payne had carelessly applied to the neighboring farmer's field had entered the Hestons' field and damaged the Hestons' red clover crop.

The case was tried on April 2, 3 and 4, 1973. Conflicting testimony was given during the trial concerning the cause of the damage to the respondents' clover crop. Some witnesses testified that in their opinion the damage had been caused by 2–4–D, while others testified that it had been caused by failure of bees to pollinate the crop or by an infestation of honeydew aphids. Conflicting testimony was given concerning the care that Robert Payne had taken in applying the herbicide to the nearby field. In particular, the conflicting testimony centered upon the questions of whether Robert Payne had stopped application of the herbicide early in the morning of May 28, 1972, or whether he had continued his operations until 10:30 or 11:00 a. m.; whether the temperature at the time he stopped applying the herbicide was still in the 50's or had risen to the 80's; whether the wind was blowing in a direction that would carry the herbicide toward or away from the Hestons' clover crop; and whether the wind speed at the time of the application was great enough to carry the herbicide to the Hestons' field. Because the witnesses at trial had testified that temperatures in the 80's, gusty wind conditions caused by the late morning sun warming the fields, and winds in excess of a few miles per hour could scatter 2–4–D away from the field to which it was being applied to neighboring fields, the meteorological conditions at the time of the application of the herbicide were of particular importance in determining whether the 2–4–D that Payne had applied had caused the crop damage.

In support of his contentions that he had taken reasonable precautions while applying the herbicide, Payne introduced into evidence exhibit A, which he testified was a business record prepared in the regular course of business on the day the 2–4–D was applied. The entries in that exhibit included the wind direction and speed, the temperature, and the time at which he had stopped his application of the herbicide on the morning in question. The information in the exhibit supported Payne's testimony at trial that he had not been careless in the application of the herbicide and was not responsible for any damage to the clover crop.

The verdict, which nine of the twelve jurors signed, was for the defendant; judgment was entered upon the verdict on April 6, 1973. On July 27, 1973, the plaintiffs filed a supplemental motion for new trial, praying that the judgment be set aside under I.R.C.P. 60(b)(3) [1] on the ground that it had been procured through fraud and misrepresentation. The plaintiffs' affidavits stated that after the trial they had learned that Payne's flying records for the year 1972 had been destroyed by fire and that exhibit A could not have been made in the regular course of business. Two evidentiary hearings were held upon the motion. In those hearings Payne admitted that he had not prepared exhibit A in the regular course of business at the time he was applying the herbicide, but instead had prepared the exhibit months later in anticipation of trial. His testimony further showed that the temperature listed in exhibit A had been the airport temperature at the time he had started flying that morning, not the temperature of the fields at the time that he had quit, and that he had listed the temperature from memory because he had no temperature notation on the notes he had made at the time of appli-

1. The district court ruled upon the motion on December 11, 1973. I.R.C.P. 60(b) then in effect provided:
   "RULE 60(b). *Mistakes, Inadvertence, Excusable Neglect, Newly Discovered Evidence, Fraud, Grounds For Relief From Judgment Or Order.*—On motion and upon such terms as are just, the court may relieve a party . . . from a final judgment . . . for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . The motion shall be made . . . not more than six months . . . after the judgment . . . was entered or taken . . . ."

cation from which he had prepared exhibit A. Furthermore, although exhibit A showed that Payne had quit spraying the neighboring field at 10:00 a.m. on May 28, 1972, Payne testified that his notes prepared on the day of application showed that he had finished spraying a different field at 10:00 a.m. Those notes did not indicate when he finished spraying the field in question. The district judge, who was not the same judge who presided at the trial (because the trial judge had died in the interim), granted the Hestons' motion to set aside the judgment and granted a new trial. Payne appealed. We affirm.

■ It has been shown by clear and convincing evidence that Payne misrepresented that exhibit A was a business record prepared at the time he applied the 2–4–D, which he knew was not true, and that the exhibit contained representations which he could not verify from examination of notes he had made on the day he applied the 2–4–D or which were in conflict with those notes.

■ Although business records are hearsay, they are admissible into evidence under the provisions of I.C. § 9–414 if "made in the regular course of business, at or near the time of the act, condition or event . . . ." Among the reasons for this exception to the hearsay rule, according to McCormick on Evidence, § 306, pp. 719–720 (2d ed. 1972), is the "unusual reliability" of records customarily and systematically maintained as part of a business's normal operating procedure. If exhibit A were in fact the business record that it was represented to be it would have been strong evidence that the clover crop had not been damaged by careless application of 2–4–D. Thus, because exhibit A purported to recite the temperature, quitting time and other data concerning application of the herbicide on the day in question, and because this document was represented as an authentic business record and not as a document prepared in anticipation of trial, the probability that the exhibit could have tainted the verdict of the jury is apparent. In this circumstance, "[w]e will

not attempt to weigh the effect of fraud upon the verdict; rather, the mere existence of fraud, taken together with the probability of influence resulting therefrom, is sufficient to require vacation of the judgment and a new trial." *State ex rel. Symms v. V–1 Oil Co.*, 94 Idaho 456, 458, 490 P.2d 323, 325 (1971).

Order affirmed. Costs to respondents.

McQUADE, C. J., and McFADDEN, DONALDSON and SHEPARD, JJ., concur.